**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>-against-<br><br>NUTRA PHARMA CORPORATION, ERIK DEITSCH a/k/a RIK DEITSCH, and SEAN PETER McMANUS,<br><br>                    Defendants. | 18 Civ. 05459 (JS) (ST) |

### DECLARATION OF ELIZABETH BAIER

I, Elizabeth Baier, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am employed as a Staff Accountant in the Division of Enforcement in the New York Regional Office of Plaintiff Securities and Exchange Commission (the "SEC").

2. I submit this Declaration in support of the SEC's Motion for Partial Summary Judgment.

3. I make this Declaration based upon, among other things, my review of the following categories of voluminous documents and information: (a) documents produced to the SEC by Defendant Nutra Pharma Corporation ("Nutra Pharma"), including agreements with investors and consultants to the company; (b) Nutra Pharma bank account records; (c) Nutra Pharma transfer agent records; (d) personal brokerage account records for Defendant Erik Deitsch ("Deitsch"); (e) public SEC filings by Nutra Pharma and Deitsch; (f) pleadings filed with the Court in this litigation; and (g) requests for admission, and responses thereto, exchanged between the parties to this litigation.

4.     I was provided each of the documents and directed to each of the sources of information by SEC attorneys who represent the SEC in this litigation and asked to review and summarize the information described below.

## Summary Charts

5.     Attached hereto as Exhibit 1 is a true and correct copy of a summary chart I prepared concerning investments in Nutra Pharma between May 1, 2015, and December 31, 2015.  The sources of information I reviewed in order to prepare this chart are listed on the second page.

6.     The "Investor" column lists the name of each investor, the "Issuance Date" and "Shares Issued" columns list the dates and numbers of shares issued to each investor, and the "Amount Invested" column lists the amount of money each investor paid to Nutra Pharma in exchange for those shares.  The "State/Country of Residence" column lists the residence (state or country) of each investor as described in their respective subscription agreement and/or purchaser questionnaire.

7.     Attached hereto as Exhibit 2 is a true and correct copy of a summary chart I prepared concerning issuances of Nutra Pharma common stock both to investors and for services between May 1, 2015, and December 31, 2015.  The sources of information I reviewed in order to prepare this chart are listed on the second page.

8.     Similar to Exhibit 1, the "Issuance Date" and "Shares Issued" columns list the dates and numbers of shares issued to each "Recipient of Shares," which the "Agreement Type" column notes are either investors ("Investment") or an individual or entity that received shares in return for services ("Services").  The "Date(s) of Counterparty Signature" column corresponds to

the date that the counterparty to the relevant agreement—either an investor or a recipient of shares for services—dated his or her signature on the document.

9.   Additionally, on Exhibit 2, the "Shares Issued Since Prior Form 10-Q (Cumulative)" column contains a running total of new shares issued since the then-prior Form 10-Q Nutra Pharma filed with the SEC (the date of which is listed in the "Date on Prior Form 10-Q" column).  That running total of new shares is calculated by adding together the shares in the "Shares Issued" column.  The "Shares Outstanding as of Prior Form 10-Q" column lists the number of shares outstanding as disclosed in the then-prior Nutra Pharma Form 10-Q filed with the SEC.  As a result, the "Percentage Increase" column is calculated by dividing the "Shares Issued Since Prior Form 10-Q (Cumulative)" column by the "Shares Outstanding as of Prior Form 10-Q" column.  In other words, "Percentage Increase" provides the increase in number of Nutra Pharma shares issued (whether to investors or in return for services), expressed as a percentage of Nutra Pharma's shares outstanding reflected on its then-most-recent Form 10-Q.

10.   Attached hereto as Exhibit 3 is a true and correct copy of a summary chart I prepared concerning Deitsch's purchases of Nutra Pharma common stock in his personal brokerage accounts between November 2012 and April 2016.  The sources of information I reviewed in order to prepare this chart are listed on the fourth page.

11.   The "Trade Date" column lists the date on which each of the trades was placed by Deitsch—either in his TD Ameritrade brokerage account (for trades between November 8, 2012, and August 13, 2015) or his Scottrade brokerage account (for trades between September 1, 2015, and April 5, 2016).  All of the listed transactions were purchases of Nutra Pharma common stock.  The "Total Volume" column lists the number of shares purchased on each day, while the "Total Transactions" column lists the number of separate purchases that Deitsch executed each

3

day. The "Total Statement Amount" column is the amount of money Deitsch spent on all purchases that day, which is broken down between the cost of the shares themselves ("Total Stock Cost") and the fees and commissions Deitsch paid to purchase the shares ("Total Commissions and Fees").

12. I have reviewed copies of each of the Forms 4 and Forms 5 on the SEC's EDGAR system concerning Deitsch's holdings of Nutra Pharma stock that were filed on or after November 8, 2012. None of these forms identify any of the personal brokerage account transactions listed on Exhibit 3.

### Review of Subscription Agreements and Purchaser Questionnaires

13. In connection with my work on this matter, I have reviewed copies of the subscription agreements and purchaser questionnaires produced by Nutra Pharma for the investors in Nutra Pharma in 2015. These documents were contained in a 407-page file titled "Request 14," which had the Bates numbers NUTRA002429–2835.

14. The "Request 14" file contains completed and blank subscription agreements and purchaser questionnaires, as well as evidence of payment, related to various offerings of Nutra Pharma common stock to investors. The file does not contain a list of all offerees for any of these offerings, including the offering in 2015.

15. Each of the purchaser questionnaires that I reviewed contained the following language on the first page of the questionnaire: "The purpose of this Questionnaire is to determine whether you are an 'accredited investor' as such term is defined under Rule 501 of Regulation D under the Securities Act of 1933, as amended (the "Securities Act")."

16. Each of the purchaser questionnaires that I reviewed asked the prospective investors three numbered questions (with subparts), including whether the investor's net worth

(with a spouse, if applicable) exceeded $1 million; whether the individual had an individual annual income exceeding $200,000 or a joint income with his or her spouse exceeding $300,000 in each of the two most recent years; and about the investor's educational background and experience investing in securities.

17. Each of the purchaser questionnaires that I reviewed required the investor's signature, along with a representation that the information was true and correct.

18. Deitsch counter-signed each of the subscription agreements I reviewed concerning investments in Nutra Pharma in 2015.

### Review of Document Productions

19. I understand from the attorneys representing the SEC in this litigation that all of the documents that have been produced either by Nutra Pharma, Deitsch, Defendant Sean McManus, or any other third parties, either in this litigation or in the SEC investigation named *Trading Practices in NutraPharma Corp. (NPHC)*, SEC file number NY-9423, are contained in a designated document review database (the "Database").

20. At the request of these attorneys, I ran searches in the Database concerning two investors in Nutra Pharma in 2015—Charles Barbee ("Barbee") and Jane Thomas ("Thomas").

21. For Barbee, I ran the search term "Barbee*" in the Database, gathered the families (*i.e.*, the parent email or document and any attachments thereto) for all search term hits, and reviewed the results. The search results I reviewed did not show that either Nutra Pharma or Deitsch sent Barbee any financial information about Nutra Pharma prior to Barbee's investment in the 2015 offering.

22. For Thomas, I ran the search terms "Jane* and Thomas*" in the Database, gathered the families for all search term hits, and reviewed the results. The search results I

reviewed did not show that either Nutra Pharma or Deitsch sent Thomas any financial information about Nutra Pharma prior to Thomas's investment in the 2015 offering.

### Review of SEC Filings and Calculations of Shares Outstanding

23. I have reviewed copies of each of the annual reports on Form 10-K, along with any amendments thereto, that Nutra Pharma filed with the SEC's EDGAR system during the period April 1, 2008, through June 30, 2018 (the "Relevant Period").

24. Each of these Forms 10-K report Deitsch's holdings of Nutra Pharma stock, along with the holdings of Nutra Pharma's other officers and directors.

25. Each of these Forms 10-K contains a section entitled "Section 16(a) Compliance of Officers and Directors."

26. Each of the Forms 10-K that Nutra Pharma filed during the Relevant Period since April 1, 2011 (which was the Form 10-K for the fiscal year ending December 31, 2010), state that, "based on our review of Forms 3, 4, 5, and Schedule 13D furnished to us during the last fiscal year, all of our officers and directors filed the required reports."

27. Deitsch signed each of the Forms 10-K that Nutra Pharma filed during the Relevant Period as the company's chief executive officer.

28. As of March 31, 2014, Nutra Pharma had 1,056,274,057 shares of its common stock outstanding, based on its Form 10-K for its fiscal year 2013 (which I understand is attached to the Declaration of Lindsay Moilanen as Exhibit 33).

29. Based on my review of the transfer agent records for Nutra Pharma (specifically, SEC-NUTRA-000106488–106489), between April 1 and 10, 2014, the only new shares that were issued were the 50,000,000 shares issued to Deitsch on April 10, 2014. As a result, as of

April 10, 2014, I calculate that Nutra Pharma had 1,106,274,057 shares of common stock outstanding.

30.     As of April 14, 2016, Nutra Pharma had 106,894,580 shares of its common stock outstanding, based on its Form 10-K for its fiscal year 2015 (which I understand is attached to the Declaration of Lindsay Moilanen as Exhibit 34).

31.     Based on my review of the transfer agent records for Nutra Pharma (specifically, SEC-NUTRA-000348745–348749), between April 15 and July 5, 2016, a total of 46,908,026 new shares were issued through 25 separate issuances, two of which were to Deitsch and totaled 19,000,000 shares.  As a result, as of July 5, 2016, I calculate that Nutra Pharma had 153,802,606 shares of common stock outstanding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 9, 2021
Merrick, New York

_____
Elizabeth Baier

7