UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

-against-

NUTRA PHARMA CORPORATION,
ERIK DEITSCH a/k/a RIK DEITSCH, and
SEAN PETER McMANUS,

          Defendants.

18 Civ. 05459 (JS) (ST)

# PLAINTIFF SECURITIES AND EXCHANGE COMMMMISSION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Lee A. Greenwood
Preethi Krishnamurthy
Lindsay S. Moilanen
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-1060 (Greenwood)

*Attorneys for Plaintiff Securities and Exchange Commission*

May 21, 2021

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .................................................................................................................................1

    I.    The Nutra Defendants Raise No Material Factual Dispute as to their Violations of Securities Act Section 5 (Claim 7)......................................................................................1

        A.  The Rule 506(b) Safe Harbor Exemption Is Unavailable. .......................................1

            1.   The Nutra Defendants Failed to Provide the Required Information. .................2

            2.   The 2015 Offering Included General Solicitation. ............................................3

        B.  The Rule 506(c) Safe Harbor Exemption Is Unavailable. ......................................5

        C.  Rule 508 Is Unavailable............................................................................................5

        D.  The Securities Act Section 4(a)(2) Exemption Is Unavailable. ..............................7

    II.   The Nutra Defendants Raise No Material Factual Dispute as to their Violations of Exchange Act Section 13(a) and Rule 13a-11 (Claims 10 and 14). ...............................9

    III.  Deitsch Raises No Material Factual Dispute as to His Violations of Exchange Act Stock Ownership and Purchase Disclosure Requirements (Claims 8 and 9)...............10

CONCLUSION............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Risco v. McHugh*, 868 F. Supp. 2d 75 (S.D.N.Y. 2012) ................................................................. 2

*SEC v. Alternate Energy Holdings, Inc.*, No. 10 Civ. 621, 2014 WL 2515710, at *1
   (D. Idaho May 13, 2014) ........................................................................................................ 8–9

*SEC v. e-Smart Technologies, Inc.*, 82 F. Supp. 3d 97 (D.D.C. 2015) ........................................ 10

*SEC v. Ishopnomarkup.com, Inc.*, No. 04 Civ. 4057, 2007 WL 2782748, at *1
   (E.D.N.Y. Sept. 24, 2007) ....................................................................................................... 6–7

*SEC v. Knight*, 694 F. App'x 853 (2d Cir. June 7, 2017) ............................................................... 6

*SEC v. Levin*, 849 F.3d 995 (11th Cir. 2017) ............................................................................. 6–7

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) ............................................................................... 8

*United States v. Christie*, 825 F.3d 1048 (9th Cir. 2016) ............................................................. 4


**Statutes**

Exchange Act Section 13(a), 15 U.S.C. § 78m(a) .......................................................................... 9

Exchange Act Section 13(d), 15 U.S.C. § 78m(d) ........................................................................ 10

Exchange Act Section 16(a), 15 U.S.C. § 78p(a) ......................................................................... 10

Securities Act Section 4(a)(2), 15 U.S.C. § 77d(a)(2) ............................................................ 4, 7–8

Securities Act Section 5, 15 U.S.C. § 77e ...................................................................................... 1

Securities Act Section 20, 15 U.S.C. § 77t ..................................................................................... 5

**Rules**

Exchange Act Rule 13d-2, 17 C.F.R. § 240.13d-2 ...........................................................10

Exchange Act Rule 13a-11, 17 C.F.R. § 240.13a-11..........................................................9

Exchange Act Rule 16a-3, 17 C.F.R. § 240.16a-3...........................................................10

Local Civil Rule 56.1..........................................................................................................2

Regulation D, Rule 502, 17 C.F.R. § 230.502 ..........................................................2, 4, 7

Regulation D, Rule 506, 17 C.F.R. § 230.506 ......................................................... passim

Regulation D, Rule 508, 17 C.F.R. § 230.508 .................................................................5–7


**SEC Releases**

*Regulation D; Accredited Investor and Filing Requirements*, Release No. 33-6825, 1989 WL 1093485, at *1 (Mar. 14, 1989) ...........................................................................6

*Revision of Certain Exemptions from Registration for Transactions Involving Limited Offers and Sales*, Release No. 33-6389, 1982 WL 35662, at *1 (Mar. 8, 1982) ..........................2


**Treatises**

Thomas L. Hazen, Treatise on the Law of Securities Regulation (Dec. 2020) ...............6

# PRELIMINARY STATEMENT[1]

The SEC's three sets of relevant claims are, as the Nutra Defendants concede, primarily "strict liability" claims involving "precise[ ]" compliance (Opp'n at 1) with statutes and SEC rules governing stock offerings, public companies, and their executives, which are designed to protect investors in the securities markets. Although the Nutra Defendants repeatedly claim factual disputes exist to warrant denying summary judgment, they do not genuinely dispute the facts material to these claims. For example, of the relatively few facts they even claim to dispute, they improperly "dispute" many of them as "incomplete" only by offering irrelevant facts of their own. They further offer unsupported legal arguments—including that their undisputed failure to file one type of required document should be legally excused because they later filed a different document with similar information—that defy common sense. The Court should therefore grant the SEC's motion for partial summary judgment in its entirety.

# ARGUMENT

**I. The Nutra Defendants Raise No Material Factual Dispute as to their Violations of Securities Act Section 5 (Claim 7).**

The Nutra Defendants do not dispute that the SEC has made a *prima facie* showing that they violated Securities Act Section 5 with the 2015 Offering, and they therefore bear the burden of proving the shares they offered and sold were exempt from registration. (SEC Br. at 13–15.)

**A. The Rule 506(b) Safe Harbor Exemption Is Unavailable.**

The Nutra Defendants cannot meet their burden of showing the Rule 506(b) safe harbor applies to the 2015 Offering because the undisputed facts show that the offering did not meet two

---

[1] This reply brief uses the same short forms as the SEC's moving brief (Dkt. No. 68-1, "SEC Br."). Also, "SEC 56.1 Stmt." refers to the SEC's Local Civil Rule 56.1 statement (Dkt. No. 68-2); "Opp'n" refers to the Nutra Defendants' opposition brief (Dkt. No. 72); "Nutra 56.1 Stmt." refers to the Nutra Defendants' Local Civil Rule 56.1 statement (Dkt. No. 72-1); and "Deitsch Decl." refers to the Declaration of Erik Deitsch (Dkt. No. 73).

separate conditions. *Both* conditions must be met to obtain this safe harbor exemption from registration, and the Nutra Defendants now admit that the first condition was not met.

### 1. The Nutra Defendants Failed to Provide the Required Information.

To qualify for an exemption under Rule 506(b), a defendant must have "delivered" or "provided" unaccredited investors with specific financial information, described in Rule 502(b), before selling the securities to the unaccredited investors. (SEC Br. at 16–17); *see also Revision of Certain Exemptions from Registration for Transactions Involving Limited Offers and Sales*, Release No. 33-6389, 1982 WL 35662, at *11–12 (Mar. 8, 1982) ("furnish[ing]" the required financial information means "delivery" of, or "provid[ing]," the information).

Despite these requirements, the Nutra Defendants do not dispute that (1) they sold Nutra Pharma shares in the 2015 Offering to two unaccredited investors (Barbee and Thomas) and (2) those investors were not provided with *any* financial information about Nutra Pharma before they bought the shares. (*Compare* SEC 56.1 Stmt. ¶¶ 66–78 *with* Nutra 56.1 Statement ¶¶ 66–78.)[2] Indeed, the Nutra Defendants claim that they provided *other* investors with a "standard cover email," in which they provided "links to a number of internet sites that provide information about Nutra Pharma"—although not all the information required by Rule 502(b)(2)(ii)(A)–(C). (Nutra 56.1 Stmt. ¶¶ 26, 27, 78.) But the Nutra Defendants admit that they did not provide even this cover email to the two unaccredited investors. (*Id.* ¶ 78 ("Deitsch did not send Barbee the standard cover email" and "Deitsch did not send her [Thomas] the standard cover email").

The Nutra Defendants' legal argument that the Rule 506(b) exemption requires an issuer to provide no more than general internet links to unaccredited investors such that the investors

---

[2] In response to certain of these and other paragraphs in the SEC's 56.1 Statement, the Nutra Defendants respond, "No dispute but incomplete," and then make other assertions that do not controvert the listed facts. These types of responses violate Section III(G)(2) of the Court's Individual Rules and Local Civil Rule 56.1(b) and should be disregarded by the Court. *See*, *e.g.*, *Risco v. McHugh*, 868 F. Supp. 2d 75, 86 n.2, 90 n.10 (S.D.N.Y. 2012).

must then research the offering on their own (Opp'n at 21–22)—thus switching the Securities Act's burden of informing unaccredited investors about the offering *from* the issuer *to* the investor—is incorrect. But this legal argument is irrelevant, because the Nutra Defendants admit they did not provide even internet links to the two unaccredited investors in the offering. This undisputed fact alone defeats the Nutra Defendants' Rule 506(b) registration exemption.[3]

### 2. The 2015 Offering Included General Solicitation.

Even if the Nutra Defendants *had* met the condition above, they still cannot meet their burden of proving that the second condition applies. The 2015 Offering undisputedly involved a "general solicitation" of investors through a telephone campaign that reached potential investors who had no prior relationship with Nutra Pharma. (SEC Br. at 17–19.)

As an initial matter, the Nutra Defendants do not dispute the key facts demonstrating this telephone campaign. (*Compare* SEC 56.1 Stmt. ¶¶ 10, 13–15, 19, 21–26, 28–29, 35, 42, 48, 51–52, 59–60 *with* Nutra 56.1 Stmt. ¶¶ 10, 13–15, 19, 21–26, 28–29, 35, 42, 48, 51–52, 59–60.) Nor do the Nutra Defendants dispute that at least one investor, Harrell, received multiple calls from Castaldo's firm, Wall Street Buy Sell Hold, concerning several stocks, including Nutra Pharma; that Harrell had not previously invested in Nutra Pharma or otherwise had any prior relationship with Nutra Pharma before Deitsch sent Harrell an email offer to invest in the 2015 Offering; and that Harrell invested the next day. (*Compare* SEC 56.1 Stmt. ¶¶ 39, 41, 43, 49, 51–52, 56, 62–63 *with* Nutra 56.1 Stmt. ¶¶ 39, 41, 43, 49, 51–52, 56, 62–63.) Instead, the Nutra Defendants offer three meritless arguments to support their general solicitation argument (Opp'n at 20–23).

---

[3] Whether Barbee and Thomas asked for additional information or signed papers Deitsch sent them saying they had "been furnished" with all information they had requested (Nutra 56.1 Stmt. ¶¶ 71, 77–78) is also irrelevant. Rule 506(b) requires issuers to furnish the specified information to unaccredited investors, whether they know enough to ask for the information or not. The Nutra Defendants cite no authority to the contrary. (Opp'n at 21–22.)

3

*First*, the Nutra Defendants suggest that the terms "general solicitation" in Rule 502(c) and "public offering" in Securities Act Section 4(a)(2) are unconstitutionally vague for due process reasons. (Opp'n at 20–21 (citing no cases addressing these terms).) But these terms pertain to affirmative defenses on which the Nutra Defendants bear the burden of proof. (SEC Br. at 13–14.) Thus, constitutional vagueness challenges—which apply to legal prohibitions, not affirmative defenses to such prohibitions—cannot apply here. *See, e.g.*, *United States v. Christie*, 825 F.3d 1048, 1064–65 (9th Cir. 2016).

*Second*, the Nutra Defendants' argument disputes that Castaldo's firm and McManus offered shares to investors who had no relationship with Nutra Pharma, despite factual and legal concessions to the contrary. The Nutra Defendants contend that Castaldo's firm called its subscribers to target stock purchasers who might be interested in purchasing Nutra Pharma shares in the public market but that the firm "did not cold call or solicit orders" for Nutra Pharma shares in the 2015 Offering. (Opp'n at 22.) Yet the Nutra Defendants offer no argument that these steps, regardless of whether or not they involved solicitations of orders, constitute "offers" under controlling case law. (*Compare* SEC Br. at 21 *with* Opp'n at 22.) And the Nutra Defendants concede that Castaldo's firm spoke to at least one investor in the 2015 Offering (not a public market investor), Harrell, about investing in Nutra Pharma and that Harrell had no prior relationship with Nutra Pharma. (*Compare* SEC 56.1 Stmt. ¶¶ 35, 39, 41–43, 46–49, 51–52, 59–60, 63 *with* Nutra 56.1 Stmt. ¶¶ 35, 39, 41–43, 46–49, 51–52, 59–60, 63.)

*Third*, the Nutra Defendants contend that the Rule 506(b) exemption applies because two unaccredited investors invested in the 2015 Offering, while Rule 506(b) permits 35 unaccredited investors. (Opp'n at 22.) While Rule 506(b) does permit 35 unaccredited investors, that is

4

irrelevant. The Nutra Defendants cannot avail themselves of the Rule 506(b) exemption because they cannot meet the two other conditions described above (*see also* SEC Br. at 15–19).

B.     **The Rule 506(c) Safe Harbor Exemption Is Unavailable.**

As the Nutra Defendants concede, all investors in an offering must be accredited for the Rule 506(c) safe harbor to apply and the Nutra Defendants accepted investments from two unaccredited investors in the 2015 Offering. (Opp'n at 23.) The Nutra Defendants' suggestion that the relative percentages of investments by accredited and unaccredited investors is somehow relevant to the applicability of Rule 506(c) finds no support in the language of the rule or any other authority of which the SEC is aware, and the Nutra Defendants cite to none. (*Id.*)

C.     **Rule 508 Is Unavailable.**

Rule 508 of Regulation D provides, in relevant part, as follows:

(a) A failure to comply with a term, condition or requirement of [Rule 506] will not result in the loss of the exemption from the requirements of section 5 of the Act **for any offer or sale to a particular individual or entity**, if the person relying on the exemption shows:
  (1) The failure to comply did not pertain to a term, condition or requirement directly intended to protect **that particular individual or entity**; and
  (2) The failure to comply was insignificant with respect to the offering as a whole, provided that any failure to comply with [Rule 502(c)] shall be deemed to be significant to the offering as a whole; and
  (3) A good faith and reasonable attempt was made to comply with all applicable terms, conditions and requirements of [Rule 506].
(b) A transaction made in reliance on [Rule 506] shall comply with all applicable terms, conditions and requirements of Regulation D. **Where an exemption is established only through reliance upon paragraph (a) of this section, the failure to comply shall nonetheless be actionable by the Commission under section 20 of the Act.**

17 C.F.R. § 230.508(a) (Aug. 13, 1992) (emphases added). As Rule 508(b) makes clear, Rule 508(a) applies only to private investor actions against a defendant—not SEC enforcement actions under Securities Act Section 20, like this one (Second Am. Compl. (Dkt. No. 49) ¶ 14). *See also*

*Regulation D; Accredited Investor and Filing Requirements*, Release No. 33-6825, 1989 WL 1093485, at *1, 4 (Mar. 14, 1989) ("[T]he rule specifies that any failure to comply with a provision of Regulation D is actionable by the Commission under the Securities Act.").

Although the Nutra Defendants point to Judge Hurley's decision in *SEC v. Ishopnomarkup.com, Inc.*, 2007 WL 2782748, at *9 (E.D.N.Y. Sept. 24, 2007) (Opp'n at 24–25), which denied the SEC summary judgment on its Section 5 claim on Rule 508 grounds, Judge Hurley later concluded that his prior decision was "wrong." (Ex. A (attached hereto) (Tr. of Sept. 12, 2014 Hr'g) at 138:16–21.) In granting the SEC's motion *in limine* to preclude the defendant's Rule 508 defense at trial, Judge Hurley correctly held:

> The rule itself provides that the exemption set forth in 508(a), the good faith, is not applicable to an enforcement action by the SEC. . . . That conclusion is evident from a reading of the rule, the impact of the rule is free of ambiguity.

(*Id.* at 138:22–140:6.)[4]

The Nutra Defendants cite only one other case on this point (Opp'n at 24), *SEC v. Levin*, in which the Eleventh Circuit reached the opposite conclusion: that Rule 508 can apply to SEC enforcement actions. 849 F.3d 995, 1002–05 (11th Cir. 2017). To the SEC's knowledge, no court in the Second Circuit has adopted *Levin*, which contradicts the plain reading of Rule 508. *See* Thomas L. Hazen, *Treatise on the Law of Secs. Reg.* (Dec. 2020) § 4:81 n.18 ("Rule 508's safe harbor . . . only affects claims by private parties.") (citing *Levin* with "[b]ut see")).

Yet even if Rule 508 did apply in SEC enforcement actions, it cannot apply here as a matter of law. Rule 508(a)(1) permits only deviations from Rule 506 that are not "directly intended to protect" a "particular individual or entity." 17 C.F.R. § 230.508(a)(1). Rule 506(b)'s requirement that an issuer provide financial information to unaccredited investors—investors

---

[4] After a jury verdict in the SEC's favor, the defendant appealed without raising the Rule 508 issue, and the Second Circuit affirmed. *See SEC v. Knight*, 694 F. App'x 853 (2d Cir. June 7, 2017) (Summary Order).

whom the SEC's regulations plainly deem to be in need of special protection when purchasing unregistered securities—is not the type of deviation that Rule 508(a)(1) permits. The Nutra Defendants' undisputed failure to provide two unaccredited investors with *any* financial information about Nutra Pharma or its securities offering before selling them unregistered securities is precisely the type of failure that falls outside Rule 508(a)(1) as a matter of law. The Nutra Defendants cite no cases to the contrary.[5]

Indeed, in both the original *Ishopnomarkup* decision and *Levin*, the courts permitted the Rule 508 issue to go to a jury based on factual disputes not present here. In *Ishopnomarkup*, the defendants had subscription agreements showing that all the investors claimed to be accredited. 2007 WL 2782748, at *9. In *Levin*, the defendant had evidence the issuer attempted to comply with Rule 506 by requiring all investors to submit "certifications" that they were accredited or otherwise met the requirements of Rule 506(b)(2)(ii). 849 F.3d at 1002–03. In contrast, the Nutra Defendants concede they had *no reason to believe* Barbee or Thomas were accredited investors, because both submitted questionnaires to Deitsch showing they were not accredited.[6] (*Compare* SEC 56.1 Stmt. ¶¶ 68, 71, 74, 77 *with* Nutra 56.1 Stmt. ¶¶ 68, 71, 74, 77.)

### D. The Securities Act Section 4(a)(2) Exemption Is Unavailable.

The Nutra Defendants cannot meet their burden of showing the Section 4(a)(2) exemption applies to all *offerees* in the 2015 Offering, as required to meet the exemption, as opposed to all those who ultimately *decided to purchase* the securities. (SEC Br. at 20–21.) In claiming to dispute that they have never produced a list of all such offerees, the Nutra

---

[5] Trying to interpret Rule 508(a)(1)'s reference to "that particular investor or entity" shows precisely why Rule 508's plain language cannot logically apply to SEC enforcement actions. The SEC does not bring enforcement actions on behalf of particular investors or entities. This language therefore makes sense only in the context of investors who sue for rescission or other remedies in private actions under Securities Act Section 5.

[6] Because the 2015 Offering involved a Rule 502(c) general solicitation (*see* Section I.A.2, *supra*), Rule 508 is also inapplicable because the rule deems this failure significant to the whole offering. 17 C.F.R. § 230.508(a)(2).

7

Defendants first confirm that they produced evidence identifying only those who purchased securities in the offering and then cite only the SEC's own summary judgment submission in support of their claimed factual dispute. (*Compare* SEC 56.1 Stmt. ¶ 79 *with* Nutra 56.1 Stmt. ¶ 79 (referencing only "subscription documents," "all of the emails," and "all of the control logs showing the stock issuances").) Furthermore, the Nutra Defendants concede that McManus spoke with at least a "handful" of potential investors in the 2015 Offering, whose names he does not recall. (*Compare* SEC 56.1 Stmt. ¶¶ 21–24 *with* Nutra 56.1 Stmt. ¶¶ 21–24.) These undisputed facts alone render the Section 4(a)(2) exemption unavailable.

In any event, the Nutra Defendants still could not meet their burden of proving the four factors courts consider in determining whether the Section 4(a)(2) exemption applies to an offering. (SEC Br. at 21–23.) The Nutra Defendants do not even address the first two factors. (Opp'n at 19–20.) The Nutra Defendants claim they can satisfy the third factor based on a factual dispute as to whether they engaged in a general solicitation (*id.* at 18–20), but, as discussed above in Section I.A.2, there are no genuine factual disputes on that issue. On the fourth factor, the Nutra Defendants offer no evidence that all offerees (whom they cannot even identify, as discussed above) had relationships with Nutra Pharma such that they had access to the types of information that an SEC registration statement reveals. (SEC Br. at 23.) At most, the Nutra Defendants offer evidence that investors had access to historical SEC filings and other general information about the company on websites. (Nutra 56.1 Stmt. ¶¶ 27, 51, 78; Deitsch Decl. Exs. A & B.) The Nutra Defendants offer no evidence, however, that investors in the 2015 Offering had access to the types of information included in Securities Act registration statements, such as "the use of investor funds, the amount of direct and indirect commissions, and accurate financial statements." *SEC v. Murphy*, 626 F.2d 633, 647 (9th Cir. 1980); *see also SEC v.*

8

*Alternate Energy Holdings, Inc.*, 2014 WL 2515710, at *12 (D. Id. May 13, 2014) (granting SEC summary judgment on Section 5 claim and holding Section 4(a)(2) exemption inapplicable).

II. **The Nutra Defendants Raise No Material Factual Dispute as to their Violations of Exchange Act Section 13(a) and Rule 13a-11 (Claims 10 and 14).**

The Nutra Defendants do not genuinely dispute any of the facts that form the basis for Nutra Pharma's primary violation of Exchange Act Section 13(a) and Rule 13a-11 for failing to file *any* required Forms 8-K disclosing stock issuances. (SEC Br. at 23–25; *compare* SEC 56.1 Stmt. ¶¶ 80–88 *with* Nutra 56.1 Stmt. ¶¶ 80–88.) Instead, the Nutra Defendants argue that their failures should be excused because they eventually reported these stock issuances on the company's Forms 10-Q. (Opp'n at 27.) They cite no legal authority for that proposition, which confuses the different purposes of *quarterly* reports on Forms 10-Q with those of *current* reports on Forms 8-K. Adopting the Nutra Defendants' argument would eviscerate the SEC rule requiring public companies like Nutra Pharma to disclose significant unregistered stock issuances within four business days on Forms 8-K—not months later on quarterly reports.

The Court should similarly reject Deitsch's argument that he cannot be held liable as an aider and abettor because he did not know that Nutra Pharma had issued unregistered shares that totaled 5% or more of its last-reported shares outstanding, triggering the requirement to file Forms 8-K. (*Id.*) Deitsch undisputedly accepted investors' funds for share purchases, generally knew when Nutra Pharma issued unregistered shares, and signed the company's filings reporting the number of its outstanding shares.[7] (SEC Br. at 25–27; *compare SEC* 56.1 Stmt. ¶¶ 6, 33–34, 84 *with* Nutra 56.1 Stmt. ¶¶ 6, 33–34, 84). Instead, Deitsch seems to argue, without citing any evidence, that he did not perform this simple calculation. (Opp'n at 27.) Whether he did or not,

---

[7] As the Nutra Defendants even point out, Deitsch testified that he instructed Nutra Pharma's transfer agent to issue shares by "board resolution," which he obtained by contacting members of the board (including himself) to obtain their approval for each share issuance or group of share issuances. (Opp'n at 2; Nutra 56.1 Stmt. ¶ 89.)

9

the undisputed facts show that he knew or recklessly disregarded that the 5% threshold had been met by either knowing the shares were issued and performing the calculations (as he had for past Forms 8-K) or knowing the shares were issued and failing to do so. (SEC Br. at 25–26.)

III.     **Deitsch Raises No Material Factual Dispute as to His Violations of Exchange Act Stock Ownership and Purchase Disclosure Requirements (Claims 8 and 9).**

Deitsch does not dispute any of the facts underlying his failures to timely (1) amend his Schedule 13D filing under Exchange Act Section 13(d)(1) and Rule 13d-2(a) (*compare* SEC 56.1 Stmt. ¶¶ 91–103 *with* Nutra 56.1 Stmt. ¶¶ 91–103) or (2) file Forms 4 and Forms 5 under Exchange Act Section 16(a) and Rule 16a-3 (*compare* SEC 56.1 Stmt. ¶¶ 104–107 *with* Nutra 56.1 Stmt. ¶¶ 104–107).[8] Rather, Deitsch again argues that these failures should be excused due to other filings by Nutra Pharma—here, annual Forms 10-K. (Opp'n at 28–29.) Again, he offers no authority for his position that making one required SEC filing somehow eliminates the legal obligation to make a different required SEC filing at a different time for purposes of these strict-liability claims. Indeed, the Forms 10-K Deitsch relies on—and signed himself—acknowledge that Nutra Pharma officers, directors, and large holders of stock (like him) were subject to Section 13(d) and 16(a) reporting requirements. (*Compare* SEC 56.1 Stmt. ¶¶ 108–110 *with* Nutra 56.1 Stmt. ¶¶ 108–110); *cf. SEC v. e-Smart Tech., Inc.*, 82 F. Supp. 3d 97, 105–106 (D.D.C. 2015) (rejecting argument that Form 10-K disclosures excused defendant CEO's failure to make required filings under Exchange Act 16(a)).[9]

## CONCLUSION

For these additional reasons, the Court should grant the SEC's motion.

---

[8]     Though Deitsch has undisputedly never filed a Form 4 or a Form 5 for any of the relevant purchases, the SEC's Second Amended Complaint only alleges violations of Section 16(a) and Rule 16a-3 beginning in 2014.

[9]     In its moving brief, the SEC incorrectly cited this decision as being from the "S.D.N.Y." (SEC Br. at 26.)

Dated: May 21, 2021         SECURITIES AND EXCHANGE COMMISSION
      New York, New York

By:   /s/ Lee A. Greenwood
     Lee A. Greenwood
     Preethi Krishnamurthy
     Lindsay S. Moilanen
     Securities and Exchange Commission
     New York Regional Office
     200 Vesey Street, Suite 400
     New York, NY 10281
     (212) 336-1060 (Greenwood)

*Attorneys for Plaintiff*