UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE
COMMISSION,                                    :
                                                      04 CV 4057
          Plaintiff,                           :

              -against-                        :   U.S. Courthouse
                                                   Central Islip, N.Y.
ISHOPNOMARKUP.COM, INC,SCOTT    :
W. BROCKOP, ANTHONY M. KNIGHT,
and MOUSSA YEROUSHALMI a/k/a     :
MIKE YEROUSH
                                                :
          Defendants.                           TRANSCRIPT OF TRIAL
                                                :
                                                   September 12, 2014
- - - - - - - - - - - - - - - X:  1:30 p.m.

BEFORE:

          HONORABLE DENIS R. HURLEY, U.S.D.J.


APPEARANCES:

For the Plaintiff:    UNITED STATES
                      SECURITIES AND EXCHANGE COMMISSION
                      3 World Financial Center, Room 4300
                      New York, New York 10281
                      BY:  ALEX VASILESCU, ESQ.
                           CHRISTOPHER J. DUNNIGAN, ESQ.


For the Defendant:    ANTHONY KNIGHT, Pro Se



Court Reporters:      HARRY RAPAPORT
                      OWEN M. WICKER
                      United States District Court
                      100 Federal Plaza
                      Central Islip, New York 11722
                      (631) 712-6105

1  A F T E R N O O N   S E S S I O N

2

3       THE COURT:  Good afternoon, everybody.

4  Please be seated.

5       MR. VASILESCU:  Good afternoon.

6       MR. DUNNIGAN:  Good afternoon, Judge.

7       MR. KNIGHT:  Good afternoon.

8       THE COURT:  The reason we're here this afternoon

9  is for the Court to provide its bench decisions on various

10 issues raised on Wednesday of this week and were not

11 resolved on that date.

12      The nature of the applications generally consist

13 of a series of in limine motions which seek to limit the

14 nature of the proof presented before the jury to the

15 extent certain issues are not in dispute, and also to rule

16 on items which are of significantly debatable

17 admissibility.

18      The first item that we'll address concerns the

19 effect of this Court's decision rendered on September 24,

20 2007.  In that decision, the Court denied the plaintiff

21 SEC's application for summary judgment directed at the

22 second cause of action in the complaint, that being a

23 cause of action charging a violation or violations of

24 section 5 of the Securities Act of 1933.

25      This problem has essentially two parts.  The

1  first has to do with whether certain statements made in

2  the Court's decision denying the motion for summary

3  judgment basically resolved certain issues which are

4  important in this case.

5       For present purposes, I'll label that as the

6  prima facie aspect of the present discussion concerning

7  the effect of the September 2007 decision.

8       The second portion or aspect of the matter

9  presently under discussion concerns Rule 508(a).

10      Against that backdrop, I'll review briefly the

11 decision of September 24, 2007, because I believe that is

12 necessary to place these two items in appropriate context.

13      The SEC, as noted previously, sought summary

14 judgment with respect to its second cause of action.  That

15 is the cause of action which is predicated on alleged

16 violations of section 5 of the Securities Act of 1933.

17      When the Court was presented with that motion,

18 there were two ways that I might have approached the

19 matters and perhaps others.  But the two that were

20 concerned are, one, to focus on the exemption portion of

21 the relevant statute and say, in essence, there is a

22 factual dispute here as to whether some of the exemptions

23 under the relevant statute are applicable.

24      Had I done that, I would have been consistent

25 with the decision that was written on that particular

1  subset of the problem, said that there were material

2  issues of fact as to the exemptions, and therefore since

3  the exemptions basically, if established, would negate any

4  possible violation of the statute, that would resolve the

5  matter.

6       Now the other way to do it, and the way I

7  actually did do it, was to analyze section 5 and to go

8  through its component parts, and then having done that,

9  which is the first part of the analysis, to address the

10 exemptions.

11      My point is, the exemptions could have been

12 addressed in the first instance, and that would have

13 greatly shortened the decision.

14      The secondary point I'd like to make in this

15 regard is that when I went through the prima facie aspect

16 of the subject cause of action, I was not endeavoring to

17 issue partial judgment nor was I asked to issue partial

18 judgment on these subsets of the cause of action.

19      I'll step back and go through the several

20 elements of the second cause of action.

21      As to the second cause of action, the SEC must

22 establish no registration statement that the securities

23 were filed or was in effect of the commission;

24      Two, a person directly or indirectly to sell or

25 offer to sell securities; and

1       Three, the sale was made through the use of

2  interstate facilities or by the mail.

3       So they are the elements.

4       Against that backdrop, I indicated in the

5  September 2007 decision that, one, there was -- it was

6  undisputed in a sense there was no evidence presented

7  before me for purposes of the motion to indicate that

8  registration statements were filed.

9       I also concluded, again on the information

10 before me as part of my preliminary analysis, that there

11 was no dispute that securities were offered for sale and

12 in fact were sold.

13      And similarly, one or more sales entailed the

14 use of a facility of interstate commerce.

15      So based on that, I said a prima facie case has

16 been made out.  I made that in the context of deciding

17 whether there was a material issue of fact on the issues

18 that were presented to me.

19      I then turned to the exemptions, and the

20 exemptions only come into play if the SEC makes out a

21 prima facie case.  Once that occurs, it is then the burden

22 of the defendant to come forward in an effort to show that

23 one or more of the exemptions that may be applicable is in

24 fact applicable, and, thus, there is no violation of the

25 charged section.

1      Also in the decision which is important, and
2 I'll mention it now, the Court also found that the three
3 stock offerings that were made within a relatively
4 condensed period of time were integrated for purposes of,
5 I believe, it's Rule 504. And that similarly is
6 significant.
7      Now, the SEC takes the position that those
8 matters have already been decided and, accordingly,
9 there's nothing for the jury to decide on these issues.
10 Why? Because the Court has, in effect, issued a
11 declaration, albeit not in a judgment resolving these
12 issues.
13      I have wrestled with this problem. In fact, I
14 believe in 2009 during one of the numerous bench
15 conferences undertaken with respect to this case I told
16 Mr. Knight that it was my view, and in fact I think I
17 stated a little more categorically, that the question of
18 the prima facie violation of section 5 was no longer on
19 the table. I had determined that issue during the summary
20 judgment issue phase of the case.
21      I have gone over that conclusion a number of
22 times since that date, and I think that conclusion
23 probably was incorrect. I say that for the following
24 reasons:
25      Firstly, I do recognize that one of the purposes

1 of summary judgment is to cull out, among other things,
2 independent of the circumstances, to cull out of the case
3 that which otherwise might be contested by not validly
4 contested. And therefore a party can ask for a summary
5 judgment on a particular point and/or a particular cause
6 of action, and if the movant is successful in that regard,
7 that particular element or cause of action is removed from
8 the case.
9      Here, that's really not done. The SEC's target
10 was section 5, that being the second cause of action. I
11 was not asked to make these subsidiary findings during my
12 analysis in determining whether there was a material issue
13 of fact as to such items as to interstate commerce,
14 nonregistration and securities offered for sale.
15      So in essence what I'm saying is that on the
16 prima facie case, insofar as the Court indicated in its
17 summary judgment motion that a prima facie case was
18 established for purposes of that motion, that
19 determination does not carry over to trial. That being
20 said, however, I think it is important to note certain
21 facts.
22      In this case, there was an answer served to the
23 SEC's complaint. The SEC's complaint was filed, I
24 believe, in November or thereabouts in 2004, and an answer
25 was filed in January of 2005. The complaint and the

1 answer have framed this case.
2      This case has had a long history. There have
3 been a number of discovery problems. There have been
4 reopening of discovery deadlines and so forth. However,
5 throughout this prolonged process there was never a motion
6 made under federal civil Rule 15 or otherwise to modify
7 the answer.
8      Now, of late there has been some complaint about
9 the answer because Mr. Knight has contended that the
10 answer, though filed and allowed to stand for years before
11 the issue was even raised, was prepared without his input
12 by his ex-attorney or without his input on some of these
13 key issues.
14      Now, I recognize under Rule 15 that liberality
15 should be exercised in determining whether a pleading
16 should stand. If in fact there was no prejudice to the
17 other side and the pleading was adjusted, typically the
18 Court would grant an amendment if one was sought, which is
19 not the case here, to the movant.
20      The key factor in evaluating a motion to amend
21 the pleading, which again is not made, but let's assume
22 that it was made, would be prejudicial to the defendant.
23 The prejudice here would be overwhelming. The SEC was
24 allowed to rely on the issues as framed in the complaint
25 and the answer, and they did rely. They conducted their

1 discovery accordingly, and there was voluminous discovery.
2      If I entertained a motion now, and this is
3 somewhat of a parenthetical given the procedural history
4 of the case, to modify the answer, this case would have to
5 go back to square one. That serves no one's interest.
6      So again, the issues in this case are framed by
7 the complaint and the answer. In the answer, there are a
8 number of admissions.
9      Again, I've gone through the whole answer and
10 I've compared it to the complaint, and I'll not go through
11 all of these. But by way of one example, there's no
12 question that no registration statement was filed. That
13 allegation is made in paragraph 92 of the complaint, and
14 the defendant admitted that such was the case in his
15 response, also bearing paragraph 92 of the answer.
16      Also, with respect to the stock offerings, I
17 suggest to SEC counsel, and I suspect they've already done
18 this, that they go through the answer with respect to that
19 matter. I do know that there is an admission in the
20 complaint, or admissions, I should say, concerning there
21 being three stock offerings. There is an admission as to
22 the total amount of money realized from those stock
23 offerings. There's an admission, I believe, that the
24 investors were residents of 21 of our 50 states. And I
25 think there may be admissions as to the time frames, I

1  believe certainly as to some, perhaps all of the three.
2       So two items of the prima facie case, although
3  not admissible, complements of the summary judgment
4  decision rendered in September of 2004, are clearly
5  established via admissions made in the answer. And I'm
6  prepared to take judicial notice of that at any point.
7       I would tell the jury, in fact, there is no
8  dispute that there is no registration statement in this
9  case, and to the extent there is further specificity
10  concerning the so-called prima facie elements that are
11  elucidated by the complaint and more appropriately the
12  answer, I'm prepared to take judicial notice of that. And
13  we can discuss later how that could be done, but I could
14  do it in a preliminary instruction to the jury so they
15  understand what the issues are. So there's different ways
16  it could be done.
17       With respect to the interstate commercial
18  component of the prima facie case, that is addressed in
19  paragraph 93 of the complaint, with the response to that
20  paragraph found in paragraph 93 of the answer. It is my
21  recollection that there is not an admission by the
22  defense. Whether the mails were used or the telephones
23  were used or some other means of interstate commerce or
24  implicating interstate commerce, to that extent it's
25  debatable.

1       From reviewing papers that have been submitted,
2  it appears there will be a number of witnesses who will
3  testify. Some of those witnesses will be investors, so
4  the interstate commerce element will be elicited from
5  them, if in fact interstate commerce was implicated.
6       Now, the next question I want to address
7  concerns section or Rule 508(a). That subject is
8  addressed, as alluded to earlier, in the Court's September
9  24, 2007, decision.
10       Actually, before I go to that issue, I'll back
11  up on the question of integration.
12       On the question of integration -- I'm sorry.
13       I've read the answer in conjunction with the
14  complaint. When the plaintiffs review the document again,
15  and I know they've reviewed it many times, if in fact
16  there are admissions as to the dates and times -- I think
17  there are. But if that is true, then the question is:
18  What is the law that applies to integration? What are the
19  factors that the Court must concern in determining whether
20  serial offerings should be counted as one for purposes of
21  the material rule, that being Rule 504?
22       In one of the submissions by the SEC, the
23  various criteria that the Court must consider or facts the
24  Court must consider whether there is integration is set
25  forth. That is also gone over in the Court's decision

1  back in 2007.
2       The juxtapositioning of the facts in this case,
3  thus, to the extent they've been thus far presented to the
4  Court and most of the factual presentations made in the
5  summary judgment motions previously alluded to with the
6  test to determine whether there is integration, it would
7  appear there is clearly integration.
8       Just to step back for a moment. In the Court's
9  decision of 9/24/07, on page 8 there is a recitation of
10  the elements that bear on the question of integration with
11  a number of cases cited, one of which is SEC against
12  Cavanagh, C-A-V-A-N-A-G-H, 155 F.3d 129, and the relevant
13  language appearing at 363. The lower court case was
14  decided in the Southern District of New York, and the work
15  products of the judge in the Southern District of New York
16  was affirmed under 155 F.3d 121 of the Second Circuit in
17  1998.
18       Now, Mr. Knight raises the point and has
19  certainly more than a modicum of legitimacy that the
20  question of 508 was decided back in 2007. The rules set
21  forth the requirements for reargument, and I was not asked
22  to revisit this subject until many years had passed.
23  Thus, the application for reconsideration was denied on
24  the ground that it was untimely.
25       However, the SEC takes the position that, all

1  right, let's assume that is correct, which it is. They
2  are making a motion in limine and they are saying, Judge,
3  if it is clear as a matter of law that 508(a), more
4  particularly the exemption under 508(a), is not available
5  in an action by the SEC by way of an enforcement action as
6  succinct from a private litigant trying to recovery money,
7  the Court has an obligation to take another look if for no
8  other reason than to simplify, consistent with the law,
9  the task that is to be presented to the jury who will
10  serve on this case.
11       My point is, I'm not considering this as an
12  application for reconsideration under Rule 56. I'm
13  considering it consistent with my obligations as the trial
14  judge as an in limine motion. If this was debatable, that
15  would be one case; however, it is not.
16       When we discussed this back in 2007, the Court
17  cited a number of cases, all of which involved private
18  litigants. Based on those cases and the lack of any
19  elucidation of the point which suggested a contrary
20  conclusion by the SEC, we reached a certain conclusion.
21  It turns out that that conclusion is wrong.
22       The rule itself provides that the exemption set
23  forth in 508(a), the good faith, is not applicable to an
24  enforcement action by the SEC. That is precisely what we
25  have here. That conclusion is evident from a reading of

1  the rule, the impact of the rule is free of ambiguity and

2  indicates that what I just said is accurate.

3        I also note just parenthetically that there is a

4  treatise available through Westlaw, which treatise is

5  entitled, as I understand it, "Treatise on the Law of

6  Security Regulations." And there's an indication that the

7  database has been updated as of July of 2014.

8        In chapter four there's an indication -- well,

9  chapter four is entitled "Exemptions From 1933 Act

10  Registration." And in footnote 24 to that chapter, which

11  was written by Thomas Lee Hazen, there is an indication

12  that the rule presently under discussion is, as its text

13  indicates, unavailable in the context such as we have

14  here; in other words, an enforcement action by the SEC.

15        So the point is, in a nutshell, in this issue

16  and prescinding from the integration issue for a moment,

17  the Court's conclusions in its September 2007 decision as

18  part of its analytical process which led to the denial of

19  defendant's summary judgment motion do not constitute

20  conclusions which preclude the subject from being

21  presented to the jury. However, at least two, or possibly

22  all three, of the elements of a prima facie case which

23  then shifts the burden to the defendant to prove an

24  exemption are found, or is -- I forget what it is -- but

25  in any event, can be found in the answer.

1        There are a number of admissions in the answer

2  which directly are on point on the subject and in fact

3  resolve certain disputes.

4        Under 508, that exemption is not available to

5  Mr. Knight. It has no applicability to Mr. Knight, and

6  therefore that would not be placed before the jury.

7        On the question of the integration, I think I

8  may have gone through this in part, and if I have, bear

9  with me.

10        As I indicated earlier, I think, if all of the

11  elements or all of the factors which bear on whether

12  integration occurred through these three serial offerings

13  had been admitted in the answer, then -- and that's the

14  factual underpinnings for the criteria -- then what

15  happens is, the matter is before me.

16        If no further evidence is presented by

17  Mr. Knight to suggest that these three offerings, to whom

18  they were made, during what time frame, the purpose of the

19  offering, unless further information is presented on those

20  five factors which are set forth in the Cavanagh case,

21  I'll be compelled to find there was integration.

22        So I'm not closing the door. If there is

23  something I don't understand and hasn't been presented,

24  and it can be presented without a violation of one of the

25  numerous discovery orders in this case, fine. But the

1  facts as they are, that comes out before the jury.

2        In other words, I'll not find there is

3  integration at this point, but if the information is in

4  the admissions, or if not in the admissions in whole or in

5  part, in the testimony, and it dovetails with the evidence

6  presently before me, I'll rule as a matter of law there is

7  integration.

8        Why? Because no reasonable trier of fact under

9  that hypothetical scenario could reach a contrary

10  conclusion, and that is really a legal issue for me in any

11  event. I'll not ask the jury if there is integration.

12  But to the extent there may be some nuances, could present

13  a jury question -- well, I'll leave it at that. I hope

14  both sides understand.

15        So the SEC, either through admissions in the

16  answer or by testimony, if they can establish whether

17  these three serial things, stock offerings occurred,

18  etcetera, and if that is the total amount of the evidence,

19  basically that will result in a determination of

20  integration. And that means for my purposes, my

21  understanding of Rule 504, these three offerings are

22  aggregated.

23        Now, another item that we have to go through,

24  and will, concerns the letters of intent. There is a

25  dispute between the parties as to the admissibility of

1  certain exhibits which had been mentioned in the record.

2  They were reiterated time and time again; in other words,

3  the exhibit designations on Wednesday. And I believe they

4  are G, J -- I forget the last one.

5        What is the last one?

6        MR. KNIGHT: V like Victor.

7        THE COURT: Thank you, Mr. Knight.

8        Now, the SEC's position is that a review of

9  these documents indicates that they are not letters of

10  intent. We had a decision about what is a letter of

11  intent on Wednesday. It was agreed by Mr. Knight and by

12  the SEC that the definition of "letters of intent" set

13  forth in Black's Law Dictionary is applicable in the sense

14  it is correct.

15        So against that backdrop, I think it is

16  important to look at two causes of action here. These are

17  the two causes of action which remain viable.

18        The first cause of action charges a violation,

19  among other things, of section 17(a) of the securities

20  act.

21        Section 17(a) is found in 15 U.S.C. Section

22  77q(a).

23        The elements of that cause of action are fairly

24  straightforward: one, a misrepresentation or omission

25  regarding material facts or other fraudulent conduct; two

was scienter; and, three, in the offer or sale of the security.

Now, that cause of action which partially sounds in fraud concerns a material misrepresentation or omission. To the extent that Mr. Knight has letters of intent which are found in the four exhibits we mentioned yesterday, three of which we mentioned today, which is AAH, which is either entitled a letter of intent or it arguably fits within the Black's dictionary definition of letter of intent, I will permit him over the objection of the SEC to introduce the document.

I will tell the jury that the offer is made and the document is received solely with respect to the first cause of action.

It is my understanding that -- it depends how the proof comes out, but it's my understanding that the SEC can prove its case, if in fact they can, without any reference under the second cause of action to these letters of intent. But again, it is very hard, as I've said to the attorneys before and Mr. Knight, it is very hard to render evidentiary -- or make evidentiary rulings in the abstract.

As we all know, what develops at a trial sometimes is not predictable. Items of proof are adduced. Certainly the Court may anticipate it, perhaps others. So

we have to see what develops.

In a nutshell, under the first cause of action, an aspect of that -- or one of the elements of proof is scienter. He's charged with making misrepresentations.

To the extent, for instance, that he has documents entitled "letter of intent" and they are signed and -- this is very important -- that they were signed on or before September 21, 1999, he should be able to admit that. He should be able to basically argue to the jury: I didn't know what the Black's Law Dictionary definition was. I put the title, and, yes, it was most of these, on the letter of intent. I have documents that were signed. Perhaps I have an erroneous belief that they constituted letters of intent.

Under that scenario, that would be appropriate for the jury to hear.

Now, the jury again will have a definition of what a letter of intent is and everything else, and they will be able to consider it for the purposes of the first cause of action, not the second.

The pivotal thing is we have to remember the date. At the appropriate time I'll entertain requests to charge concerning the subject because it is not indicated. Looking at these documents independent of the causes of action or the particular element of the causes of action,

these are not letters of intent. There's just not enough specificity. Again, we're talking about somebody's mind-set, scienter, under the first cause of action.

I think we've covered everything we have to cover today, but we've tried to cover a lot in a relatively short period of time, and I might be wrong. I don't want to go over something that we've already gone into, but if we skip something, obviously that should be addressed.

So first I'll check with the plaintiff. What have we skipped, if anything?

MR. VASILESCU: May I get some clarification, your Honor?

THE COURT: Yes.

MR. VASILESCU: Let's first start with the letter of intent issue.

If I correctly understand your Honor, your Honor said as to the first claim Mr. Knight can introduce documents prior to September 21, 1999 --

THE COURT: Yes.

MR. VASILESCU: -- that say "letter of intent" on it.

THE COURT: Yes.

MR. VASILESCU: So from our perspective, one of the issues here is that as discussed the other day,

Mr. Knight does refer to some documents that bear the name "letter of intent" on it. On their face they all appear to be documents with fax markings in 2000, after September of '99.

THE COURT: To be honest with you, I will withdraw that. It was a poor phrase. Withdrawn.

It is his burden, to the extent he must introduce these, to lay the proper foundation. The foundation requires that he produce information that indicates that it was prior to that date. If it was afterwards, that would seem he would have a problem in that regard, unless there is something I'm missing.

When we discussed the other dates, some of them are dated but most are not, and they have a stamp on it. They have a fax, rather, date.

MR. VASILESCU: That's correct, your Honor.

THE COURT: Unless Mr. Knight can show in fact, notwithstanding a fax date, they were actually sent earlier, they are not admissible.

MR. VASILESCU: Just to be clear, your Honor, we discussed the other day, and I think you were referencing today, there were two documents which we say are just correspondence which he marked as exhibits and referenced as letters of intent that are prior to September 21, 1999, but do not bear any sort of label "letters of intent."

1    THE COURT: Well, his labels control. And I
2  can't go through the nuances, although I'll endeavor to do
3  it, but somehow there has to be information to show that
4  these things predate. Now if a party adds a date, that
5  wouldn't do it.
6        Now, as you know, there are different ways you
7  can try to show a date. You can have a situation where
8  the recipient of the document would say, I actually got
9  that in May. I know somebody put down April, but that's
10  not when I got it. You know what I mean.
11    MR. VASILESCU: Let me clarify, your Honor.
12    THE COURT: Yes.
13    MR. VASILESCU: My understanding from what your
14  ruling here is, and I may be wrong, is that to the extent
15  that he's relying on correspondence from companies prior
16  to September 21, 1999, that say nothing about letters of
17  intent on them, he cannot rely on those and argue that
18  those are the letters of intent that he relied on.
19    THE COURT: I thought I addressed that; maybe I
20  didn't. My point on that is as follows: If it says
21  "letter of intent," that would suggest that possibly, even
22  though he put -- in most instances Mr. Knight wrote
23  "letter of intent."
24        I didn't understand that. I thought basically
25  that Mr. Knight or someone associated with iShop wrote a

1  letter to these various suppliers and they responded.
2        Well, it turns out that I did not understand
3  that. I understand it now, but I didn't at the time.
4        So the point is, it is self-labeled to some
5  extent. But that doesn't go to the weight or
6  admissibility.
7        Let's assume that he has something that predates
8  the September 1999 date. And if you take the contents of
9  that document and juxtaposition it against the agreed-upon
10  definition of what is a letter of intent, and if it seems
11  to fall within that category, then I would permit that to
12  go in as well.
13        On the other hand, if it didn't satisfy -- we're
14  talking about the ones without the label. If it didn't
15  satisfy, it would not go in.
16    MR. VASILESCU: A little bit of guidance, your
17  Honor.
18        It's our position these two documents do not
19  satisfy Black's Law Dictionary definition. So
20  procedurally, if he seeks to introduce those and we think
21  they don't meet it, and they don't have the words "letter
22  of intent" on it, can we object, approach the bench, and
23  at sidebar say to your Honor, look at it, it doesn't meet
24  it. Please preclude him from referencing it to the jury.
25    THE COURT: Absolutely.

1    MR. VASILESCU: That's very helpful.
2    THE COURT: Just object, and we'll address it
3  out of the presence of the jury. And I'll hear from both
4  sides, and I'll make a determination whether it seems to
5  fall within the purview of the Blacks's Law Dictionary
6  definition.
7    MR. VASILESCU: Addressing the first point under
8  section 5, your Honor, to some extent my prior counsel and
9  us were sort of confused as to the import of that decision
10  from 2007 in terms of what was still in dispute.
11        To the extent there is some of those elements
12  that we are going to present to the jury, I would like to
13  get some guidance. There were filings made, including
14  affidavits by Mr. Knight, in opposition to summary
15  judgment with other declarations, with documents and
16  testimony from his cocounsel -- I mean his codefendants in
17  that case.
18        Is it appropriate for us -- I think certainly
19  with Mr. Knight, since it is part of an affidavit in the
20  record in this case, that we can use it as an admission by
21  him as to his position, because these were affidavits
22  submitted by Mr. Knight.
23        And also, some of the other documents that were
24  put in by declaration in that case. That would streamline
25  the litigation.

1    THE COURT: I think we ought to approach these
2  problems somewhat while they are unfolding. But if you
3  have a deposition with an admission, you know, you can
4  follow the appropriate procedure. You would have to
5  establish in fact that was the answer he gave; that
6  he was deposed; he gave that answer; he never sought to
7  correct it. And that would go before the jury as it would
8  in any case on basically credibility.
9        With the answers, that's a little beyond
10  credibility. That's an admission.
11        Whether a deposition statement -- it could be an
12  admission, but we'll have to address that as we go along.
13  It's hard to do in the abstract.
14    MR. VASILESCU: Specifically I was representing
15  not just depositions, but he put in a signed affidavit,
16  and his counsel put in papers in that area.
17        Shall we move on to other topics?
18    THE COURT: I hope we don't have much more to
19  do.
20    MR. KNIGHT: Your Honor, may I get a chance to
21  address that?
22    THE COURT: You will get a chance. Typically
23  when I ask to hear from the parties, I always look to the
24  plaintiff's table first and then to the defense. And in a
25  criminal case -- it's just the procedure I follow. It's

1 not one party has something more significant to say than
2 the other, in my judgment.
3 Yes, sir.
4 MR. VASILESCU: Your Honor, in terms of those
5 two issues, the plaintiff has asked its questions to the
6 Court for clarity, so we can move on.
7 We'd like to address some slides that Mr. Knight
8 sent to us early this morning that he intends to use in
9 his opening. Some of these slides contain material we
10 talked about the other day which goes contrary to the
11 Judge's ruling.
12 THE COURT: Mr. Knight?
13 MR. KNIGHT: I would like to show the other
14 side's slides as well.
15 THE COURT: We'll go into the slides as well.
16 We'll take a ten-minute recess at this point.
17 (Whereupon, a recess was taken.)
18 THE COURT: If everybody would be seated,
19 please.
20 At this point there's a question about certain
21 slides that each side would like to use during the course
22 of their opening statements, and each side is asking me to
23 view the other side's and see if I feel they are
24 appropriate for opening statements.
25 How shall we do that mechanically?

1 MR. VASILESCU: Do you have paper copies of your
2 slides to hand up to the Court?
3 MR. KNIGHT: I e-mailed to you. I believe you
4 have a copy on your desk.
5 MR. VASILESCU: But the Judge needs a copy.
6 MR. KNIGHT: My slides are in response to the
7 plaintiff's, so if the Judge would see the plaintiff's
8 first, then mine will make more sense.
9 THE COURT: Good.
10 MR. VASILESCU: Your Honor, this is the paper
11 form of the slides, and it pretty much captures all the
12 materials in the PowerPoint. But there are certain
13 sentences that drop in after others, so they are not all
14 there at the same time.
15 MR. KNIGHT: I have one on my computer on my
16 desk.
17 THE COURT: I've reviewed these. I probably
18 should have one copy marked as Court's Exhibit 1.
19 Do you have extra copies of these?
20 MR. DUNNIGAN: I do, your Honor.
21 THE COURT: We can do it later. I want to make
22 sure there is something on the record.
23 MR. DUNNIGAN: I can give it to you right now.
24 I'll just write Court's Exhibit 1.
25 And Mr. Knight has a copy of these?

1 MR. KNIGHT: I have it electronically, yes, your
2 Honor.
3 THE COURT: All right. I've looked at these.
4 MR. KNIGHT: Your Honor, I can show you mine on
5 the computer, because I don't have it printed out. I
6 didn't know it would come up.
7 THE COURT: Let me go through these first.
8 The question is, which ones do you object to?
9 And if you can refer to the page numbers which appear on
10 the lower right-hand corner.
11 MR. KNIGHT: Yes, your Honor.
12 I didn't necessarily object to any of these
13 slides. I was just very surprised that the SEC used the
14 language of "lied," "lied," he kept "lying," all of these
15 things with -- is "lies." I thought it would be more
16 professional misrepresentation, or not correct
17 representation, so I responded in a similar manner.
18 THE COURT: Okay.
19 With respect to these particular ones, you don't
20 object because you are underwhelmed by their use of the
21 word "lies."
22 MR. KNIGHT: I prepared a response to those, so
23 I guess it would be my response. I don't call it an
24 objection. This is my side of the story with respect to
25 the slides, if you want to call it that.

1 THE COURT: It really isn't an expression --
2 from the SEC's point of view with respect to the slides,
3 they have to have a good-faith belief that the information
4 that is set forth in the slides, number one, help the jury
5 follow the evidence as it unfolds, and then, secondly,
6 that the information that is provided will be developed
7 during the course of the trial. It doesn't mean it
8 necessarily will be established, because there may be a
9 dispute.
10 So the first part, I suspect, will help the
11 jury, and I think that is probably true.
12 What about the idea of lies about foreign
13 offices? I'm looking at page 7. That page is entitled at
14 the top of the page "Misrepresentations and Omissions to
15 Investors." And then it is "lies about foreign offices."
16 The SEC feels it is appropriate.
17 MR. DUNNIGAN: Yes, your Honor. If you look at
18 the next page, it is a blowup of the September 21, 1999,
19 offering memorandum, PX 2. In particular, the bottom
20 paragraph there, it says the company maintains its
21 corporate headquarters in Port Washington, New York, and
22 also has branch offices in Hong Kong, Singapore, and
23 Sidney, Australia, and soon will be opening a branch
24 office in Tokyo, Japan.
25 This is one of the lies or misrepresentations

1    that was told to investors.
2        MR. KNIGHT:  Any way I can get a copy of that
3    from you?  Do you have an extra copy?
4        THE COURT:  You know, I can give you,
5    Mr. Knight, the copy I have because I have another copy
6    which I've marked as a Court's exhibit, and I'll use that.
7        MR. VASILESCU:  Your Honor, if I may add.
8        THE COURT:  Yes.
9        MR. VASILESCU:  This is a jury of lay people,
10    and it is common in SEC cases to talk about
11    misrepresentations and omissions.  And essentially in
12    layman's terms, those are lies.  It's a way to communicate
13    to the jury using a layman's description what are in the
14    security's which are prohibited from fraud.
15        MR. KNIGHT:  Your Honor, I don't object to that.
16    I also use layman's terms in my slides, which I'm not
17    objecting to.
18        THE COURT:  He says no problem with these,
19    including the word "lies," according to Mr. Knight.  But
20    that is dependent basically on the jury being privy to his
21    characterization of certain activities.
22        MR. KNIGHT:  Just use the same language, your
23    Honor, that's all.
24        THE COURT:  Have you seen his?
25        MR. DUNNIGAN:  We have.

1        MR. VASILESCU:  And I can address that.
2        If I may approach the bench.
3        THE COURT:  Yes.
4        MR. VASILESCU:  These slides were not numbered,
5    so these are Mr. Knight's slides in paper form.  But I
6    numbered them in the bottom left corner, so we can
7    reference them more easily, 1 through 12.  12 pages.
8        Preliminarily, I don't think the observation
9    that he does use the word that the SEC is lying, and I do
10    have a problem with that, it has been adjudicated what
11    defenses Mr. Knight can raise, and he brought that other
12    lawsuit accusing the SEC of misconduct which was
13    dismissed.
14        MR. KNIGHT:  That's not referenced here.
15        THE COURT:  Only one person at a time.
16        MR. VASILESCU:  So we have presently fraud
17    claims pending against Mr. Knight that are appropriately
18    recognized and actionable and going to trial.  So to the
19    extent we're characterizing the claims as Mr. Knight
20    making lies while at iShop to investors, I think that is
21    within the bounds of the claims.
22        When Mr. Knight uses the terms "the SEC is
23    engaging in lies" and uses other words which go to
24    arguments he made before in these other cases that we
25    somehow suppressed evidence and engaged in misconduct --

1    I'm personally fine with Mr. Knight saying that the SEC
2    isn't highlighting certain evidence that is in the
3    evidence, but once he starts using pejorative terms that
4    show intent, like "lying," then he's accusing us of
5    misconduct in this case, and that is out of bounds for a
6    number of reasons.
7        One, he did bring a lawsuit which was dismissed.
8    And he hasn't filed in his answer counterclaims of that
9    which are appropriate to be tried before this jury.  So I
10    think those generally go far afield the repeated use of
11    the SEC lying here.
12        MR. KNIGHT:  Your Honor, can we go through this
13    slide by slide?  Let's look at their slide and then mine
14    in response, and I'll clarify.
15        THE COURT:  No.  What I'll do is on the SEC
16    slides, there is language in there -- I don't think it is
17    appropriate in an opening.
18        Now, I do recognize this is what the IRS or the
19    SEC believes would be established.
20        On number 2 it says "the boss."  Now, the mere
21    fact that may be contested doesn't mean that the SEC can't
22    take that position.  But I'm not particularly crazy about
23    the word "boss."
24        I think having now -- assuming this is accurate,
25    or assuming that the SEC has information which indicates

1    that he's a cofounder, which he admits, the amount of
2    shares he owns, and was the chairman of the board at one
3    time, that's fine.
4        I'll take out the word "boss."  We just want to
5    give them an overview.  We don't want to have a final
6    argument.  You know, in summation, that is a different
7    story, but this is the opening.
8        The idea of the lies -- for instance, looking at
9    item number 7, it reads, the caption, "Misrepresentations
10    and Omissions to Investors."
11        One -- rather than having lies about foreign
12    offices, I'd rather have something, one, about the
13    existence or the number of foreign offices.
14        MR. VASILESCU:  It's our position, your Honor,
15    there were no foreign offices, and those statements were
16    an outright falsehood.
17        THE COURT:  Just put existence, about the
18    existence of foreign offices.  In other words, that's the
19    title you can have, one, about the existence of foreign
20    offices.  The jury will understand it.  But this way, for
21    an opening statement, I'd rather have them hear the
22    evidence and let them draw some of the conclusions.
23        MR. VASILESCU:  Understood, your Honor.  We were
24    trying to give them a preview of what we'll establish in
25    the case.

**159**

1        THE COURT:  I have no problem with that, and I
2   think that does that, what you believe will be shown.
3        MR. VASILESCU:  Can we say there were no foreign
4   offices?
5        THE COURT:  Yes, you can say that.
6        Let's think how to do it though, to make sure.
7        Misrepresentations to investors.  Let's see.  So
8   the case that there were foreign offices, something like
9   that, or the representation, even though that is a
10  restatement, but -- why don't you come up with the
11  language.  You can tell me now.
12       MR. VASILESCU:  To be clear, we'd like to
13  communicate that our --
14       THE COURT:  I know that, but I want to knock out
15  the word "lies," "boss," some of these conclusory
16  statements which are somewhat inflammatory.
17       I understand your position, what you believe the
18  evidence will show.  And then the evidence will be before
19  them.  And in summation, any label attacked is against the
20  background as adduced, as distinct from the evidence you
21  anticipate will be adduced.  And I understand that.
22       I'm not particularly good with technology, but I
23  don't think this is a major effort by you.
24       MR. VASILESCU:  We can edit it, your Honor,
25  absolutely.

**160**

1        THE COURT:  In the old days this would be a
2   disaster from counsel's point of view.
3        MR. DUNNIGAN:  Not a problem, your Honor.
4        THE COURT:  Let's figure it out, and I'll give
5   input too.  But that addresses your primary concern, these
6   loaded phrases in the opening.
7        MR. KNIGHT:  And I'll do the same, your Honor.
8        MR. VASILESCU:  I have some other objections
9   with these slides.
10       THE COURT:  Well, let's go through with this.
11  I'm looking at the SEC's slides.
12       So we're talking about where the word "lies" is
13  used, I see again, on page 15.  I guess there are some
14  others -- you know, if you don't want to -- even though
15  there are misrepresentations about foreign offices, use of
16  investor funds, misrepresentations about status of iShop's
17  websites, take out the "lies."
18       MR. VASILESCU:  We should not use the word
19  "lies" at all?
20       THE COURT:  Yes.
21       And also the word "boss."  Take that out.
22       MR. VASILESCU:  All right.
23       THE COURT:  I think there's an admission in the
24  answer that -- and it was -- this is your idea,
25  Mr. Knight.

**161**

1        MR. VASILESCU:  Not his idea, but there will be
2   testimony from witnesses that he was not only the
3   chairman, he was calling most of the shots, controlling
4   money and firing people and -- essentially during the
5   period --
6        THE COURT:  Also, one time the CEO, supposedly.
7   Weren't you the CEO one time?
8        MR. KNIGHT:  At the time they claim,
9   Mr. Neissani, N-E-I-S-S-A-N-I --
10       THE COURT:  Take out the word "boss."
11       MR. VASILESCU:  Okay, your Honor.
12       THE COURT:  They'll know what you are talking
13  about.
14       So as far as the SEC's exhibits they would like
15  to show to the jury during this slide show, is there any
16  further problem other than what we've discussed?
17       MR. KNIGHT:  Yes, your Honor.  Now that I look
18  at it, I want to go over a couple of things.
19       (Continued.)
20
21
22
23
24
25

**162**

1        THE COURT:  Yes.
2        MR. KNIGHT:  They show here on page 5 a copy of
3   a private placement memorandum by iShop.  And the same
4   thing on page 6.  They explain the dates, talk about
5   foreign offices, and then it highlights that.  So we'll
6   move on with that.
7        The next one is the use of proceeds on page 12.
8        THE COURT:  Wait a minute.  I didn't understand
9   the objections to page 5 and 6.  What is that?
10       MR. KNIGHT:  I didn't get a chance to come up to
11  your Honor, but I found a copy of the business plan that
12  has that exact exhibit on page 30 with the foreign offices
13  addresses.
14       I filed a motion with the Court, and I wanted to
15  give you and them a copy of these foreign offices.  So I
16  never had a chance to present it.  But I'd like to give
17  you a copy.
18       MR. VASILESCU:  He's not objecting to the
19  slides.  He's now referencing additional documents you
20  addressed the other day that it sounds he wants to get in
21  again.
22       MR. KNIGHT:  Under Rule 106 they want an exact
23  document, and I found a copy.  I did a lot of searching,
24  but I found it.
25       THE COURT:  Page 30 and 26, this has to with on

1  the various business plans.

2  MR. KNIGHT: Defendant's Exhibit AD, which your

3  Honor said because it wasn't complete under Rule 106.

4  THE COURT: I already ruled on that.

5  MR. KNIGHT: Yes, your Honor.

6  THE COURT: In other words, that will not go in.

7  In other words, page 30 is what you have, and that's what

8  you want to put in. Page 30, for the reasons indicated,

9  is not admissible under 403.

10  If you want to get something in some other way,

11  I'll not preclude you on that. I'll not preclude you

12  because I don't know what the foundation will be.

13  MR. KNIGHT: Moving on to page 12, your Honor.

14  MR. VASILESCU: To be clear, he doesn't have any

15  objections other than the "lies" and the "boss."

16  THE COURT: Is that a fair statement?

17  MR. KNIGHT: No. We had international offices.

18  We had the confirmation of e-mails --

19  THE COURT: No, don't do this. You are a smart

20  man, but you don't listen.

21  They are allowed in their opening statement to

22  say what they believe the evidence will show. They may be

23  wrong; they may not get it in. There may be another side

24  to the story.

25  The jury will decide what the true facts are.

1  But if they have a good-faith belief whether this

2  information will get to the jury, right or wrong --

3  MR. KNIGHT: Your Honor, moving on to page 12,

4  it shows use of proceeds. And basically what they've done

5  is they really haven't shown the language below that. It

6  says: The use of proceeds is at the discretion of the

7  board of directors and management. These uses can change

8  significantly, and basically stating the salaries.

9  THE COURT: What I said a moment ago is equally

10  applicable here.

11  MR. KNIGHT: As long as I get to present my side

12  of it, I have no problem, your Honor.

13  THE COURT: You do.

14  What else do you have, if anything?

15  MR. KNIGHT: Never had a chance to address

16  anything before. I was waiting, so I can give it to you

17  and give them a copy.

18  THE COURT: What is that?

19  MR. KNIGHT: Initially, Defendant's Exhibit AD

20  was objected to as an incomplete document, and I found a

21  complete document. So I would like to submit it.

22  MR. VASILESCU: My understanding, he's not

23  talking about --

24  THE COURT: I mean, this is probably the tenth

25  time. I've already ruled on it. I've already explained

1  the nature of the Court's ruling, so I'll not do it again.

2  But if -- Mr. Knight has a right, if he thinks

3  my decision is erroneous, to have it in the record so if

4  there's an appeal, the appellate court can look and see

5  what we were talking about. So for that purpose...

6  So what we'll do is mark that as Court's

7  Exhibit 2. It's not going before the jury, but --

8  consistent with what has been said thus far, but it's to

9  give some type of concreteness to Mr. Knight's objection

10  concerning this issue.

11  And this will mark again -- I'll mark the

12  entire item. The item is motion to admit into evidence.

13  MR. VASILESCU: Your Honor, we should note this

14  is a lengthy document printed on fresh paper, and on its

15  face it doesn't bear a date. This was never produced to

16  us, offered at the eleventh hour on the eve of trial,

17  Mr. Knight printing out some sort of document that frankly

18  we don't know if he just generated it. When it was

19  created, we have no idea. So on its face, you know, we

20  note our objection.

21  THE COURT: Your objection is noted.

22  As I've said, I'm marking this as Court's

23  Exhibit 2, and that is so that there will be included

24  within the record the document he's asking me to receive

25  into evidence.

1  MR. KNIGHT: Your Honor, there's one more thing.

2  It's board consent mail. It came from -- with

3  Ms. Mehringer. I believe it is DX AC, or one of the two

4  they are objecting to. So they withdraw their copy,

5  withdraw their objection. But you don't have this in your

6  exhibits, so I brought a copy for you.

7  MR. VASILESCU: We would like to see whatever he

8  plans to hand up to the Court.

9  MR. KNIGHT: It's the same.

10  MR. DUNNIGAN: Your Honor, would you like me to

11  clarify?

12  THE COURT: Yes, sir.

13  MR. DUNNIGAN: What Mr. Knight is referring to

14  is Defendant's Exhibit AL, for which the SEC moved in

15  limine in regard to in May of this year. And Mr. Knight

16  produced the attachments. And the SEC, in its reply

17  papers, withdrew its objections, Defendant's Exhibit AL,

18  based on Rule 106.

19  MR. KNIGHT: I am producing it because you don't

20  have it in your exhibits.

21  THE COURT: Fine. Why don't you give me that.

22  MR. KNIGHT: And when you are ready, I can

23  respond to what the SEC discussed earlier.

24  THE COURT: So we're finished with the SEC's

25  slide show, as I understand it.

1      MR. KNIGHT:  Yes, and I'll modify mine
2  accordingly to take that type of language out and use the
3  similar type they will use.
4      MR. VASILESCU:  Your Honor, I still have some
5  objections to other things in his slides.
6      THE COURT:  Right.  Let me hear from the SEC on
7  this.
8      With respect to the slides that the defense
9  would like to show to the jury in reference to Court's
10  Exhibit 1, what is your position on that, on those items?
11  I'm sorry, forgive me.
12      MR. VASILESCU:  We've already done 1 and 2, if
13  any issue went to whether he can use the word "lies."  And
14  it was agreed he's taking them out too, the SEC lies.
15      Obviously, he will have to take out on page 3,
16  the bottom.  He was addressing our reference to him as the
17  "boss."  Since we're taking it out, he should be taking it
18  out on the bottom of page 3.
19      MR. KNIGHT:  No problem.
20      MR. VASILESCU:  That is also SEC lie number one.
21      Now, stock offerings, page 4, the first bullet
22  point says:  iShop represented by securities law firm of
23  Smith McCullough.
24      And I think one thing that was noted by
25  Magistrate Lindsay, we have full motion practice, relying

1  on counsel's defenses he can pursue based on the waiver of
2  the privilege so he can take a deposition.
3      Ms. Mehringer was the attorney which his defense
4  of reliance on counsel was limited to.  Now she was
5  associated with Smith McCullough.  But if you find as he
6  just said, Attorney Mehringer -- if he says Smith
7  McCullough, it suggests there were many attorneys he had
8  counsel from, which is not the case.
9      MR. KNIGHT:  We'll change it to:  iShop
10  represented by Ms. Mehringer of the securities law firm of
11  Smith McCullough.
12      MR. VASILESCU:  I will just say "law firm."
13      MR. KNIGHT:  Your Honor, it was a securities law
14  firm.  I have all the documents I can show you.
15      THE COURT:  That can be amplified during the
16  testimony.  But I'll not get into the nature of their
17  practice or whether it is 10 percent, 50 percent.
18      MR. KNIGHT:  100 percent, your Honor.  I can
19  show you.
20      THE COURT:  In any event, it will be:  iShop
21  represented by Theresa Mehringer of Smith and McCullough.
22      And you may be able to -- I'll withdraw that.
23  We'll see.
24      MR. VASILESCU:  Your Honor, on page 5, the
25  bottom bullet point.  Again, "SEC lie number two" should

1  be removed.
2      The second sentence says --
3      THE COURT:  I'm sorry, what is the page?
4      MR. VASILESCU:  I'm sorry.  My counsel pointed
5  out I need to back up a page.
6      On page 4, second bullet point, Mr. Knight
7  wrote:  September 21, 1999, iShop filed its first private
8  placement with the SEC on form D.
9      My understanding, that is not filed with the
10  SEC.  That private placement document, that is.
11      MR. KNIGHT:  Your Honor, that is in the exhibit.
12  I have a copy of it in those binders I can show you right
13  now.
14      THE COURT:  This is what he believes the
15  evidence will show.  He may be right; he may be wrong.
16  The jury will be advised it's not evidence what either
17  says in their opening.
18      MR. VASILESCU:  We'll move on, your Honor.
19      On page 5, in addition to saying "SEC lie number
20  two," the second sentence indicates misconduct by the SEC
21  and says "SEC worked hard to hide this fact" --
22      THE COURT:  That's out.
23      MR. KNIGHT:  But will --
24      MR. VASILESCU:  -- "but will be shown at the
25  trial that they lied."

1      We'll say that the whole sentence must come out.
2      THE COURT:  On the international offices -- and
3  again, I haven't read the whole thing.  There is no
4  problem with you indicating that you did have
5  international offices because that's what you believe the
6  proof will show.
7      But the bullet point will be the SEC and all --
8  the "SEC lie number two," all of that should come out.
9      MR. KNIGHT:  Anything about lie will come out.
10  They don't have to address me.  I'll address this
11  without the word "lie" and readdress that with respect to
12  hiding the facts.
13      MR. VASILESCU:  Your Honor, page 3, three
14  bullets points, "SEC lies."  But it's not enough that he
15  just take out "lie."  It's other editorializing which is
16  misconduct by the SEC.
17      "SEC lie number three," for example, that
18  section, the last line says, "but the SEC had only shown
19  part of the document."
20      Now, he can say that, but he can't say "and
21  worked so hard," so you don't see the rest of this which
22  suggests some sort of misconduct.
23      Similarly, you know, he obviously has to take
24  out the word "lie" in the next two bullet points.
25      MR. KNIGHT:  Your Honor, they haven't shown the

1 context of the document which is right underneath. It
2 says this language. If you want me to remove it, I will,
3 but I believe it happens to be accurate.
4     THE COURT: Let's go through each of the bullet
5 points. I'm on page 6. The first thing is where it says
6 "SEC lie number three." That will be deleted.
7     Then the sentence that follows it, it will be
8 deleted up to the colon.
9     What should be set forth there, you believe what
10 the evidence will show concerning this subject. And you
11 wanted to put in the discretion of the board and so forth.
12     MR. KNIGHT: Which is right underneath that.
13     THE COURT: The question is, how will you adjust
14 that consistent with what we've stated?
15     MR. KNIGHT: Anything with the word "lie" will
16 be gone. Anything with basically "SEC lying" will be
17 gone. And then the truth of the matter is, this is what
18 it says underneath.
19     If they want a different adjustment, I'm open to
20 adjust it if they want something further.
21     MR. VASILESCU: The last sentence in bullet
22 point one where it says, "but the SEC" --
23     THE COURT: That's out.
24     MR. VASILESCU: Okay.
25     THE COURT: But even the idea of "the truth,"

1 that's for the jury to decide what the truth is.
2     MR. KNIGHT: I'll take all of those things out,
3 your Honor.
4     THE COURT: Put down "the proof will show" or "I
5 anticipate the proof will show," whatever it is, about the
6 use of the proceeds.
7     So you will do that on number six, okay.
8     So we're on to seven.
9     MR. VASILESCU: Page 7 has similar issues in the
10 sense that all three bullet points start out with "SEC
11 lied." There's also in bold the word "truth."
12     And then "SEC lie number seven" at the end of
13 that paragraph. It says, "This is what the SEC don't want
14 you to see."
15     MR. KNIGHT: I'll take that out. And any
16 similar language will be taken out so you don't have to
17 repeat it. That's fine.
18     THE COURT: Are we on page 8?
19     MR. KNIGHT: Shall we move --
20     MR. VASILESCU: We'll move on to SEC 8.
21     The first sentence under the contract, again,
22 engages in accusations of misconduct by saying SEC has
23 really tried to confuse you and lie to you here.
24     MR. KNIGHT: That will be gone.
25     MR. VASILESCU: And again the word "truth."

1     THE COURT: Truth.
2     MR. KNIGHT: That will be gone.
3     MR. VASILESCU: And further down on that page,
4 in bold it says "SEC lie number 10," and then after the
5 phrase "SEC back to international offices" -- this goes
6 back to that.
7     MR. KNIGHT: Are you on 10 or 11?
8     MR. VASILESCU: 10.
9     There's a phrase in the sentence that we think
10 is improper because it sounds like it is going back to
11 arguments that were made to your Honor. And it says: SEC
12 told Honorable Judge Hurley they didn't have a copy of
13 iShop's business plan with the addresses of the
14 international offices to throw out the evidence, yet here
15 they have quoted out of the business plan that they don't
16 have it.
17     Essentially, Mr. Knight is seeking to introduce
18 what was in the document that your Honor alluded to the
19 other day by references that you excluded it and
20 characterized it.
21     MR. KNIGHT: They claimed they don't have this
22 document, yet they bring it right out of the document.
23     THE COURT: You know -- I'm sorry, what did you
24 want to say?
25     MR. DUNNIGAN: To clarify, I think Mr. Knight

1 might have gotten confused.
2     In our slides, the quotes out of the documents
3 we pulled is the confidential executive summary. He's
4 talking about a business summary which we got for the
5 first time.
6     MR. KNIGHT: That is not a business record, a
7 summary.
8     MR. DUNNIGAN: Your Honor, what we've previously
9 marked as an exhibit entitled "Confidential Executive
10 Summary."
11     THE COURT: You know, we have to make a record.
12     MR. KNIGHT: Sorry, your Honor.
13     MR. DUNNIGAN: I can look through our exhibits
14 and find the number, but we might be talking about a
15 separate document. That is, Mr. Knight is talking about a
16 separate document.
17     THE COURT: We have to resolve this. It's SEC
18 lie number ten.
19     Firstly, I don't want anything about the Court
20 representing some preliminary matter. The Court has
21 nothing to do with it. But if Mr. Knight feels -- and I
22 don't know if he's correct or not because of discovery
23 problems and other things -- that somehow the jury will
24 see the entire business plan, you can say something to
25 that effect. But you have to be careful because I don't

1 know if you will get the entire business plan in.
2 MR. KNIGHT: They only want the complete
3 document and for the only reason I submitted it. They
4 admitted that the investors were never given that business
5 plan.
6 MR. VASILESCU: Your Honor, SEC told Honorable
7 Judge Hurley they didn't have a copy of iShop's business
8 plan. He's starting to characterize motion practice
9 before the trial, and that's not proper because, one, it's
10 not accurate, and it doesn't give the context.
11 And then what will we do? Like characterizing
12 argument he made before your Honor.
13 THE COURT: I'm not sure Mr. Knight is in
14 disagreement. I think the whole thing should come out,
15 and Mr. Knight can live with it.
16 MR. KNIGHT: Your Honor, if that's what you
17 recommend, that's fine with me. That's all right.
18 MR. VASILESCU: Now, the next bullet point, SEC
19 lie number 11. We have a problem with that part of it
20 again where it says "SEC lie" and the word "truth." And
21 the rest he can properly argue his side of the case.
22 THE COURT: I agree with that. I would take out
23 on that the last bullet point "SEC lied" in number 11.
24 The Festo contract owed $5,000. "The SEC lied." I would
25 take that out.

1 The rest of it, though -- some of this is in
2 response to something that they said. We want to make
3 sure this is not telling the jury -- but when you go
4 through a slide show, you will go second.
5 So let's assume they say something about Festo.
6 You can have like a lead-in to your slide, this particular
7 slide. Do you know what I'm saying? The SEC can do the
8 same.
9 This is really meant to supplement and to assist
10 the jury following the thrust of the opening. It's not a
11 substitute for the opening.
12 MR. KNIGHT: Yes, your Honor.
13 THE COURT: But that first line really should
14 come out right through the word "truth" on the last of the
15 bullet points at the bottom of page 8.
16 MR. KNIGHT: As I mentioned to Mr. Vasilescu,
17 all of the words "lie" and "truth" from the entire
18 document will come out so he doesn't have to keep wasting
19 the Court's time.
20 THE COURT: Okay.
21 MR. VASILESCU: Your Honor, may we turn to
22 page 9?
23 THE COURT: Yes, sir.
24 MR. VASILESCU: Page 9, under the heading Major
25 Investment Banks, first bullet point, and confirm, that

1 should be taken out, SEC lie number 12. The rest of that
2 is okay.
3 The second bullet point, you know, it's not
4 appropriate to suggest that there's wording by the SEC in
5 that context.
6 THE COURT: To go back, I think on the last
7 paragraph, which would be the third bullet point, I think
8 that is out. Just take out the word "truth."
9 But an interesting wording by the SEC --
10 MR. VASILESCU: I guess I'm afraid your Honor is
11 suggesting that somehow we're coming up with language, you
12 know, for filing.
13 THE COURT: You can indicate on that bullet
14 point, you can say basically -- I don't know if this is
15 accurate though. iShop -- neither iShop or a
16 representative of iShop indicated to a potential investor
17 or to an investor that a major investment bank would take
18 the company public.
19 Does that have to do with Merrill Lynch or
20 another bank?
21 MR. KNIGHT: I don't know where this comes from.
22 I'm sure in the trial everything will unfold. But right
23 now, to make a statement, that is my response to them.
24 THE COURT: Okay. As I understand it, the SEC,
25 and correct me if I'm wrong, the SEC doesn't have a

1 problem on page 9. The "lie" reference is to be taken
2 out, and the "truth" word is deleted. Is that correct?
3 MR. VASILESCU: Yes.
4 THE COURT: So that's what we'll do on that.
5 MR. VASILESCU: Moving on, your Honor, to
6 page 10. First bullet point. "SEC lied." That phrase
7 has to be taken out.
8 Same with the word "truth" in the next bullet
9 point.
10 THE COURT: Right.
11 MR. VASILESCU: And also, we are seriously
12 concerned with the statement in the second bullet point, a
13 sentence that is in the middle, and I'll read it. It
14 says: Up to a few months ago, iShop had 6.5 million
15 products active with one of its initial suppliers alone,
16 Baker and Taylor.
17 This is highly problematic. One, there is no
18 evidence that iShop is in any way active and has any
19 business. And discovery closed a long time ago. And
20 there's also, the Court should note, an attorney --
21 Mr. Zellen had difficulty getting out of the case when he
22 represented iShop because he had no one at iShop to
23 communicate with.
24 And Mr. Knight is in a lawsuit where he hasn't
25 paid his attorneys, has failed to follow even the

1  directions by the Court to pay for transcripts, and he's
2  pro se.  And to suggest to the jury that he's going to
3  have this testimony, allowed to testify that somehow iShop
4  is a functioning entity with 6.5 million products six
5  months ago, when this company has long been defunct -- in
6  fact, the SEC waived disgorgement in a penalty.
7  Essentially it's a defunct penalty when settling with
8  iShop.
9          THE COURT:  Mr. Knight?
10         MR. KNIGHT:  I communicated to Baker and Taylor.
11 We signed papers.  They told me the six and a half million
12 products.  They were active on the website for a few
13 years.  Somehow, a few months ago -- I didn't check it --
14 it's gone off line.  But I can probably have it brought
15 back on and find out what the problem is.
16         Basically what Baker and Taylor does, they have
17 these products and put it on the iShop website without me
18 doing anything.  I give them a check for $500, and the
19 program is called Retailer Place.  You can also get these
20 products by paying $500.
21         THE COURT:  You know what the problem is, we
22 have to make sure what is presented to the jury is
23 relevant to the issues as framed by the pleadings.  So I'm
24 not really sure how something happens six months ago or a
25 year ago that bears on the particular actions set forth in

1  the complaint.
2          MR. VASILESCU:  It's fair afield.  The conduct
3  happened in '99 and '2000, and the evidence from then,
4  they had hardly any sales at all, and the company
5  essentially has been defunct and not operating.
6          Even now, I mean, Mr. Knight, he's not given any
7  financials.  And to even suggest that people can buy
8  products now --
9          THE COURT:  Unless I'm missing the point, I
10 don't see the relevance of it.  In other words, the main
11 question is when these offerings were made, among other
12 things.  Was interstate commerce involved and so forth.
13 But with respect to the first cause of action, were
14 misrepresentations made?
15         So if hypothetically during the relevant time
16 frame, that being sometime from '99 through 2000 -- and
17 this is that basically iShop had ten products.  And I know
18 they had millions, according to the defense.  But two
19 years later if they had a huge business, that in and of
20 itself wouldn't be relevant.
21         MR. VASILESCU:  We agree, your Honor.
22         THE COURT:  That's the problem.  This
23 unnecessarily confuses the issue.
24         MR. KNIGHT:  May I address that too?
25         THE COURT:  I'm sorry, go ahead.

1          MR. KNIGHT:  I'm sorry.
2          If you noticed in the letters of intent previous
3  to September 21st, there was one from Baker and Taylor,
4  which is a major supplier.
5          THE COURT:  We're just talking about this item.
6  In other words, there is no problem with you saying, you
7  know, iShop had letters of intent from suppliers during
8  the relevant time frame and, if you believe the evidence
9  will show that, again, during the relevant time frame
10 there were a number of items being sold, available on the
11 website.  You can say that.  But that's your
12 representation.
13         If you make a representation to the jury and you
14 can't prove it either because I don't let the evidence go
15 in or otherwise, usually what happens, the other side
16 points that out and it taints your credibility before the
17 jury.  They do that in summation.
18         But we're looking at this language where the --
19 "up to a few months ago."  That is clearly irrelevant
20 (perusing).
21         Now, if you had -- again, it's very hard to do
22 this -- I'll just leave it at that.
23         But "up to a few months ago," that has to come
24 out.
25         MR. KNIGHT:  If they went on the iShop website

1  and I was able to reactivate it again, and they see the
2  six and a half million items they can purchase, would that
3  be let in or do you want me to take it out?
4          THE COURT:  We'd have a mistrial, and I'd be
5  underwhelmed if that happens.  They have to make their
6  decision based on the evidence adduced in the courtroom.
7          One of the things I will tell them, do not look
8  at the internet.  Do not read anything about the case.
9          MR. KNIGHT:  I'll take that out, the second
10 part.
11         THE COURT:  That would be improper.
12         MR. KNIGHT:  Six and a half million reference,
13 if that's what you want me to take out, and not the first
14 part, correct?
15         THE COURT:  Yes.  If you believe the evidence
16 will show during the relevant time frame the first
17 statement is accurate, if you believe that, that's fine.
18         MR. VASILESCU:  Your Honor, the last sentence --
19 and this is problematic on page 10 also.
20         THE COURT:  That's out.
21         MR. KNIGHT:  The whole thing is out.
22         MR. VASILESCU:  So it's our understanding that
23 from "up to a few months ago" through the rest of that
24 paragraph, that will be deleted.
25         THE COURT:  Yes.

1   MR. KNIGHT:  Correct.

2   MR. VASILESCU:  Your Honor, skipping forward to

3   the last slide, number 12 -- well, first of all, one of

4   our in limine objections which I think your Honor

5   addressed the other day dealt with Mr. Knight making

6   arguments that the case is old and somehow suggesting that

7   it's the SEC's fault that it is old.  And his first bullet

8   point tends to go in that direction.

9   MR. KNIGHT:  Your Honor, if we can backtrack to

10  what they show, which is the stock of iShop and my

11  signature made very large, and they show worthless stock,

12  and that is in response to that.

13  MR. VASILESCU:  It appears he's trying to argue

14  there is something amiss here because the matter was

15  investigated in 2000 and the action was filed in 2004.

16  If he's allowed to go that route, then we'd have

17  to bring in the fact he'd been sanctioned in discovery

18  multiple times, and there would be a whole sideshow

19  regarding whose fault it is that it is taking ten years to

20  go to trial in this case.

21  MR. KNIGHT:  They remove their part; I'll remove

22  mine.  There is a whole bunch of stuff here.  And put my

23  signature here, and they highlighted it into a huge thing

24  here, and this is all worthless, and this is all

25  worthless, suggesting all kinds of stuff to the jury.

1   THE COURT:  With respect to page 12, the first

2   bullet point is irrelevant.  There's no reason to put that

3   in because it doesn't elucidate any point that is germane

4   to the jury's function.

5   The second bullet point falls under the same

6   category.  The problems that iShop may have had with the

7   selling of stock or reducing the value of the stock which

8   has already been sold, that is not an issue in this trial.

9   In other words, the SEC is charging violations

10  of the securities act or the exchange act and various code

11  regulations.  That's what the issue is.  What happens to

12  the stock value and why has nothing to do with the suit.

13  So the first three points have to come out.

14  Now, I don't know -- well, the last bullet point

15  as framed is objectionable as well.  So under 403, that

16  will have to be deleted.

17  So page 12 will not be part of the slide show.

18  MR. KNIGHT:  Would you also ask them to take out

19  their reference to stock and signature and all that?  That

20  is suggesting to the jury that guy sold all this worthless

21  stock.

22  MR. VASILESCU:  Your Honor, this case is about

23  his control and involvement in the sale of stock and the

24  fact that he signed them.  And in showing the jurors based

25  on these investors bought these stock certificates based on these

1   misrepresentations, I think that is fair game.

2   MR. KNIGHT:  You can prove that at trial.

3   THE COURT:  I do agree with that.  If they do

4   believe that's what the evidence will show.

5   We've already been through the SEC's slide show,

6   and that's been resolved.  And nothing that has surfaced

7   since then suggests that that subject should be revisited.

8   Accordingly, it will not be revisited.

9   MR. VASILESCU:  Your Honor, I propose that the

10  parties agree to try to revise these in sum, your rulings

11  today, and exchange them later today so that if there is

12  still an issue, in compliance with your rulings today, we

13  can raise them the first thing with your Honor Monday

14  morning.

15  THE COURT:  I think both sides are probably

16  tired, but I think that is actually a good idea.

17  MR. VASILESCU:  Thank you, your Honor.

18  THE COURT:  So I would ask Mr. Knight and

19  counsel to get together -- we've gone through it; I think

20  everybody understands the rules -- and make the

21  appropriate adjustments.  I certainly hope you'll agree,

22  but I'll be available.  I'll be around for another hour or

23  so anyway.

24  MR. KNIGHT:  I'll make every effort to make that

25  happen.

1   THE COURT:  So let us know.  And if you can't --

2   I don't want to do anything on Monday morning that will

3   delay the jury.  But if we have to, we will.  I mean, the

4   slide show is important.  That's kind of the first order

5   of business.  So see if you can get it resolved, and if we

6   have to, we'll go over to Monday morning.

7   MR. DUNNIGAN:  Your Honor, earlier today you

8   mentioned that we could get into evidence before opening

9   statements, I believe, paragraphs in the complaint that

10  were admitted by the defendant.

11  Would the Court be reading those paragraphs in

12  the complaint --

13  THE COURT:  What I want you to do is you prepare

14  the items that you would like me to take judicial notice

15  of --

16  MR. DUNNIGAN:  Yes, your Honor.

17  THE COURT:  -- as far as the answers are

18  concerned.  And there is different ways we can do that.

19  Normally, to the extent an issue isn't contested and it's

20  an important issue, I typically will tell the jury that

21  during my preliminary instruction so it gives them some

22  idea of what the nature of the dispute is.

23  So to the extent it is agreed these were

24  unregistered securities, which it is because that is

25  admitted in the answer, they should know that up front.

1    Go through and give me the paragraphs you want
2  me to include, and I'll discuss it with Mr. Knight as
3  well.  But that's the way procedurally I would handle
4  that.
5       MR. KNIGHT:  Your Honor, one more issue.
6       THE COURT:  Yes.
7       MR. KNIGHT:  On the issue of the pinpoint
8  citations in parts of the deposition that is supposed to
9  be read, the plaintiff took the deposition of Noakes, and
10  put the entire thing into evidence, which is fine with me.
11  So what I've done, I reviewed a few more that
12  are only 36 pages.  I would like to do the same.  There's
13  a couple I didn't get to because I had to print out what
14  they did, and by printing all of these documents, my
15  printer ran out of ink.  I don't know if I can finish
16  them.  I'll try.
17       MR. DUNNIGAN:  Your Honor, he can have until
18  5 p.m. on Monday to give us that.
19       MR. KNIGHT:  That's no problem.
20       THE COURT:  So you'll be able to abide by that,
21  5 o'clock?
22       MR. KNIGHT:  Yes.
23       Vavaro, and also Philip Barnard, is only 36
24  pages as well, so we'll put the whole thing in such as
25  Noakes.

1    And Baker and Taylor, I'll give them pinpoints.
2       Ingram Micro, I'll put them in.
3       THE COURT:  You are required to give pinpoint
4  citations if the deposition is 30 pages on, 35 or 100.
5       MR. KNIGHT:  And they need to do the same, your
6  Honor.
7       THE COURT:  You can do that.  But if it needs
8  relevancy you can say, I need to read the entire document.
9       MR. KNIGHT:  On the shorter ones, I can do the
10  same; the longer ones, no problem.
11       THE COURT:  You have to put before the jury what
12  is relevant.
13       MR. KNIGHT:  One more question, your Honor.
14  The opening day, like the first day of trial --
15       THE COURT:  Yes.
16       MR. KNIGHT:  -- they start the slide show and
17  they do their openings.
18       THE COURT:  The slide show is part of the
19  openings, yes.  It's a long process.
20       MR. KNIGHT:  So I guess I will go next and do my
21  opening?
22       THE COURT:  Yes.
23       MR. KNIGHT:  What happens after that, your
24  Honor?
25       THE COURT:  Then the SEC has the burden of

1    proof, and we'll leave it at that.  And so they would call
2  their first witness, or they would put in the first
3  document or evidence in some other fashion, which could be
4  judicial notice.  They can say, the plaintiff, as the
5  first order of business and as part of your proof, would
6  ask your Honor to take judicial notice of A, B and C.  If
7  I agree, I would do it.
8       MR. KNIGHT:  My question would be, when they --
9       THE COURT:  You don't have to call -- maybe this
10  will help.  You don't have to call or do anything until
11  they've presented their case.
12       MR. KNIGHT:  But in case they put an exhibit --
13  let's say Philip Barnard testifying by deposition, and at
14  the same time they are addressing that, going over
15  exhibits with him.  So they would have to show that
16  exhibit, I assume, and I can address the exhibit and the
17  testimony at the same time?
18       THE COURT:  Yes.
19       MR. KNIGHT:  Okay, your Honor.
20       MR. DUNNIGAN:  I'm sorry, I think there might be
21  miscommunication.
22       I think Mr. Knight is under the impression he'll
23  be allowed to argue to the jury.
24       THE COURT:  What was that?
25       MR. DUNNIGAN:  He'll be allowed to argue to the

1    jury about sworn deposition testimony instead of merely
2  choosing -- pointing to the highlights.
3       THE COURT:  Is that your understanding?
4       MR. KNIGHT:  I want to highlight the testimony.
5       THE COURT:  Basically during your opening, you
6  directly address the jury.  During summation, you directly
7  address the jury.
8       When you testify, you do provide information to
9  the jury subject to the rules of evidence.  But that's it.
10  I mean, you are not permitted to comment on evidence in
11  any other fashion during the course of the trial.  You are
12  not permitted --
13       MR. KNIGHT:  That's what I don't understand.  I
14  wanted to get clarification.
15       THE COURT:  That's the rule.  It's like on
16  television.  They cut a couple parts off.  But when you
17  watch "Law and Order," the witness takes the stand, the
18  witness gives direct and cross-examination and possibly
19  redirect.  That isn't followed by one of the attorneys
20  saying:  I want to make a point, Judge.
21       MR. KNIGHT:  My question is:  On the deposition
22  testimony, what happens?
23       THE COURT:  On the deposition testimony, the
24  proponent of the evidence, they will read that into the
25  record, and typically they would call somebody to take the

1  stand.  The attorney asks questions from the transcript.
2  Basically they read the questions from the transcript.
3  The person sitting on the stand reads the answers from the
4  transcript.
5      Once that is done, if the other attorney feels
6  there is other information that should be placed to the
7  jury from that transcript, they would follow the same
8  procedure.
9      MR. KNIGHT:  But there's nobody on the stand
10  because they are not present.  They are going by
11  deposition.
12      Here's my question.  You have Mr. Barnard
13  testifying by deposition, and Mr. Barnard was shown
14  exhibits by the SEC.  So my understanding, the SEC will
15  call his parts of the deposition, and they have to be in
16  conjunction with that exhibit.
17      When do I get to address it?
18      THE COURT:  When do you get to what?
19      MR. KNIGHT:  How do I do this?  Do I
20  cross-examine the deposition?  The exhibit?
21      THE COURT:  I don't know how you cross-examine a
22  deposition.  You can call some witness who gives firsthand
23  information that is contrary to that.  I mean, there are
24  different ways that can be done.
25      MR. KNIGHT:  So when it is my turn, I can bring

1  up the same deposition and the same exhibits, that is,
2  Ms. Vavaro.
3      THE COURT:  As a general matter, that's true.
4      MR. VASILESCU:  Mr. Knight was exploring --
5  there were several testimonies, two by video deposition.
6  Mr. Knight had an opportunity, or his counsel, to attend
7  those depositions.  They did not.  Mr. Noakes and
8  Mr. Barnard will be video depositions.
9      I think he was suggesting that -- and I think
10  your Honor clarified it for him.  He was suggesting after
11  we play the video deposition, he would do a speaking
12  testimony to the jury.
13      THE COURT:  I think he knows he can't do that.
14      MR. KNIGHT:  That is irrelevant, and I know I
15  can't do that.
16      THE COURT:  You know, did you get that packet I
17  told you to get from the pro se's office?
18      MR. KNIGHT:  I will get it, your Honor, but
19  that's not what I was saying at all.
20      THE COURT:  There are very concrete rules.  And
21  with respect to deposition testimony, if you have
22  firsthand information which is contrary to that, you know,
23  you don't do it then but when you get to your case.
24      MR. KNIGHT:  One more thing I need from the
25  plaintiff, your Honor.

1      Giving me the excerpts of the testimony, the
2  parts they want to read, I cannot counterquote the parts I
3  want to read, but I have the whole testimony.  If they
4  only give me the parts they want to read and I can't
5  counter the testimony, they have to give me the whole
6  testimony.
7      THE COURT:  I assume if there is a problem
8  here -- I assume Mr. Knight was required to pay for
9  certain depositions.  That's not the problem?
10      MR. DUNNIGAN:  No, your Honor.  At any
11  deposition we designated excerpts from, as a courtesy we
12  provided the entire deposition to Mr. Knight.
13      MR. KNIGHT:  The videotapes, your Honor, are
14  events.  It's not depositions.
15      MR. DUNNIGAN:  He has the transcripts, and if he
16  has a sentence he needs, we can work that out.
17      THE COURT:  So the deposition was videotaped?
18      MR. DUNNIGAN:  Yes, your Honor.
19      MR. KNIGHT:  No, your Honor, iShop shareholder
20  events, I want the complete transcript, not only the parts
21  they want to read.
22      MR. DUNNIGAN:  I think I understand now.  PX 144
23  and 148 are videotapes are iShop shareholder events.  The
24  SEC -- they are very long.  I mean, we can spend a good
25  part of this trial watching television, but that wouldn't

1  be productive.
2      We have transcripts made of what we intend to
3  put in evidence.  We did not make transcripts of the
4  entire presentation.
5      If Mr. Knight wants to pick portions of the
6  videotape he believes are relevant, we can play them.
7      MR. KNIGHT:  Would that be okay, your Honor?
8  Maybe a few minutes, maybe five minutes altogether from
9  the whole video?
10      THE COURT:  Okay.
11      In other words, he has access to the whole
12  thing, the whole video.  The video is quite lengthy.  The
13  SEC feels certain portions are irrelevant.  That's the
14  portions they want to present before the jury.
15      Then the thought is -- what is the thought?  He
16  has seen or can see a full video, and he can say, well, I
17  want the portion that occurred at 12:02 to 12:05?
18      MR. DUNNIGAN:  Before the trial, if he wants to
19  provide us with that, we can either make our objections or
20  play it.
21      THE COURT:  I mean some of these, unfortunately,
22  will have to be resolved during the course of the trial,
23  but I would ask both sides they do the best they can to
24  cooperate with each other, which I would like to have
25  has occurred thus far, because we do want to get this case

1 before the jury so they can make an intelligent decision
2 within a reasonable period of time.
3       So what else do we have to do today?
4       MR. KNIGHT:  Your Honor, there is a report from
5 Mr. Patisso.  I e-mailed a copy to Mr. Vasilescu.  I can't
6 say the name right, I want to make sure you received it.
7       MR. VASILESCU:  Mr. Vasilescu.
8       MR. KNIGHT:  I'm so sorry.
9       MR. VASILESCU:  We did receive it.
10       To clarify something.  The document at some
11 point when I described it -- Mr. Knight says that this
12 document was dated in February of 2000, and it is actually
13 something that was consistent with what I described was
14 Mr. Patisso -- after he left.
15       And there's a series of documents made --
16 essentially a submission in the Scientology community, and
17 he sent it to a business Scientology center.
18       MR. KNIGHT:  Sent to Mike Gumport.  He's
19 misstating.
20       THE COURT:  Don't do that.
21       MR. VASILESCU:  Your Honor, we have the
22 document, sent there and cc'd to other people who are at
23 iShop, and it has to do with complaints that Mr. Patisso
24 had with Mr. Knight.  We don't --
25       Our objections to the document are, you know,

1 these are documents that were in his control.  We have a
2 version that we did not designate as an exhibit which is
3 consistent with this from Mr. Patisso and from a while
4 back.  And he's producing it at the eleventh hour.
5       Frankly, if he wants it to come in, then I say
6 let's designate it as an exhibit and we can use it also.
7       MR. KNIGHT:  That's fine with me, your Honor.
8       MR. DUNNIGAN:  We can call it either Plaintiff's
9 Exhibit 360, which would be our next exhibit number, your
10 Honor --
11       THE COURT:  All right.
12       Are we done?
13       MR. VASILESCU:  Yes.
14       I would say we don't have a paper copy because
15 we have it digitally.
16       MR. KNIGHT:  I have it right here.  I can give
17 one to your Honor if you would like.
18       THE COURT:  You gentlemen will meet and try to
19 address the adjustment of the language in the various
20 slide show presentations?
21       MR. VASILESCU:  Absolutely, your Honor.
22       Thank you, your Honor.
23       THE COURT:  Very good.  Thank you, gentlemen.
24       Now, Mr. Knight, what I would suggest, either
25 before you go into a dialogue about the slide show, go

1 down to the clerk's office on the first floor and tell
2 them you want the pro se packet, because otherwise they'll
3 close at five.  They'll be gone.
4       MR. KNIGHT:  Okay, your Honor.
5       THE COURT:  That's the first order of business.
6       Very good, gentlemen.  Thank you, and I'll see
7 you all on Monday.
8       (Whereupon, the proceedings were adjourned until
9 Monday, September 15, 2014, at 9:30 a.m.)

**$**

**$5,000** [1] - 175:24
**$500** [2] - 179:18, 20

**'**

**'2000** [1] - 180:3
**'99** [3] - 146:4; 180:3, 16

**0**

**04** [1] - 126:4

**1**

**1** [5] - 152:18, 24; 156:7; 167:10, 12
**10** [6] - 168:17; 173:4, 7-8; 178:6; 182:19
**100** [3] - 126:23; 168:18; 188:4
**10281** [1] - 126:17
**106** [3] - 162:22; 163:3; 166:18
**11** [3] - 173:7; 175:19, 23
**11722** [1] - 126:23
**12** [10] - 126:10; 156:7; 162:7; 163:13; 164:3; 177:1; 183:3; 184:1, 17
**121** [1] - 137:16
**129** [1] - 137:12
**12:02** [1] - 194:17
**12:05** [1] - 194:17
**144** [1] - 193:22
**148** [1] - 193:23
**15** [5] - 133:6, 14; 142:21; 160:13; 197:9
**155** [2] - 137:12, 16
**17(a** [2] - 142:19, 21
**1933** [3] - 127:24; 128:16; 139:9
**1998** [1] - 137:17
**1999** [7] - 144:8; 145:19; 146:24; 147:16; 148:8; 154:18; 169:7
**1:30** [1] - 126:11

**2**

**2** [5] - 154:19; 157:20; 165:7, 23; 167:12
**2000** [4] - 146:3; 180:16; 183:15; 195:12
**2004** [3] - 132:24; 135:4; 183:15
**2005** [1] - 132:25
**2007** [10] - 127:20; 128:7, 11; 130:5; 136:9; 137:1, 20; 138:16; 139:17; 149:10
**2009** [1] - 131:14
**2014** [3] - 126:10; 139:7; 197:9
**21** [7] - 134:24; 144:8; 145:19; 146:24; 147:16; 154:18; 169:7
**21st** [1] - 181:3
**24** [4] - 127:19; 128:11; 136:9; 139:10
**26** [1] - 162:25

**3**

**3** [4] - 126:16; 167:15, 18; 170:13
**30** [5] - 162:12, 25; 163:7; 188:4
**35** [1] - 188:4
**36** [2] - 187:12, 23
**360** [1] - 196:9
**363** [1] - 137:13

**4**

**4** [2] - 167:21; 169:6
**403** [2] - 163:9; 184:15
**4057** [1] - 126:4
**4300** [1] - 126:16

**5**

**5** [12] - 127:24; 128:16; 129:7; 131:18; 132:10; 149:8; 162:2, 9; 168:24; 169:19; 187:18, 21
**50** [2] - 134:24; 168:17
**504** [3] - 131:5; 136:21; 141:21
**508** [2] - 137:20; 140:4
**508(a** [3] - 138:3, 23
**508(a)** [2] - 128:9; 136:7
**56** [1] - 138:12

**6**

**6** [3] - 162:4, 9; 171:5
**6.5** [2] - 178:14; 179:4
**631** [1] - 126:24

**7**

**7** [3] - 154:13; 158:9; 172:9
**712-6105** [1] - 126:24
**77q(a)** [1] - 142:22

**8**

**8** [4] - 137:9; 172:18, 20; 176:15

**9**

**9** [3] - 176:22, 24; 178:1
**9/24/07** [1] - 137:9
**92** [2] - 134:13, 15
**93** [2] - 135:19
**9:30** [1] - 197:9

**A**

**a.m** [1] - 197:9
**a/k/a** [1] - 126:8
**AAH** [1] - 143:8
**abide** [1] - 187:20
**able** [6] - 144:8, 19; 168:22; 182:1; 187:20
**absolutely** [3] - 148:25; 159:25; 196:21
**abstract** [2] - 143:22; 150:13
**AC** [1] - 166:3
**access** [1] - 194:11
**according** [2] - 155:19; 180:18
**accordingly** [4] - 131:8; 134:1; 167:2; 185:8
**accurate** [6] - 139:2; 157:24; 171:3; 175:10; 177:15; 182:17
**accusations** [1] - 172:22
**accusing** [2] - 156:12; 157:4
**act** [3] - 142:20; 184:10
**Act** [3] - 127:24; 128:16; 139:9
**action** [29] - 127:22; 128:14; 129:16, 18, 20-21; 132:6, 10; 138:5, 24; 139:14; 142:16-18, 23; 143:3, 14, 18; 144:2, 20, 25;

145:3; 180:13; 183:15
**actionable** [1] - 156:18
**actions** [1] - 179:25
**active** [3] - 178:15, 18; 179:12
**activities** [1] - 155:21
**AD** [2] - 163:2; 164:19
**add** [1] - 155:7
**addition** [1] - 169:19
**additional** [1] - 162:19
**address** [17] - 127:18; 129:9; 136:6; 149:2; 150:12, 21; 151:7; 156:1; 164:15; 170:10; 180:24; 189:16; 190:6; 191:17; 196:19
**addressed** [7] - 129:12; 135:18; 136:8; 145:9; 147:19; 162:20; 183:5
**addresses** [3] - 160:5; 162:13; 173:13
**addressing** [3] - 149:7; 167:16; 189:14
**adds** [1] - 147:4
**adduced** [4] - 143:24; 159:20; 182:6
**adjourned** [1] - 197:8
**adjudicated** [1] - 156:10
**adjust** [2] - 171:13, 20
**adjusted** [1] - 133:17
**adjustment** [2] - 171:19; 196:19
**adjustments** [1] - 185:21
**admissibility** [3] - 127:17; 141:25; 148:6
**admissible** [3] - 135:3; 146:19; 163:9
**admission** [9] - 134:19, 21, 23; 135:21; 149:20; 150:3, 10, 12; 160:23
**admissions** [9] - 134:8, 20, 25; 135:5; 136:16; 140:1; 141:4, 15
**admit** [2] - 144:9; 165:12
**admits** [1] - 158:1
**admitted** [5] - 134:14; 140:13; 175:4; 186:10, 25

**advised** [1] - 169:16
**affidavit** [2] - 149:19; 150:15
**affidavits** [2] - 149:14, 21
**affirmed** [1] - 137:16
**afield** [2] - 157:10; 180:2
**afraid** [1] - 177:10
**afternoon** [5] - 127:3, 5
**afterwards** [1] - 146:11
**aggregated** [1] - 141:22
**ago** [10] - 164:9; 178:14, 19; 179:5, 13, 24-25; 181:19, 23; 182:23
**agree** [6] - 175:22; 180:21; 185:3, 10, 21; 189:7
**agreed** [4] - 142:11; 148:9; 167:14; 186:23
**agreed-upon** [1] - 148:9
**ahead** [1] - 180:25
**AL** [2] - 166:14, 17
**albeit** [1] - 131:11
**ALEX** [1] - 126:17
**allegation** [1] - 134:13
**alleged** [1] - 128:15
**allowed** [7] - 133:10, 24; 163:21; 179:3; 183:16; 189:23, 25
**alluded** [3] - 136:8; 137:5; 173:18
**alone** [1] - 178:15
**altogether** [1] - 194:8
**ambiguity** [1] - 139:1
**amend** [1] - 133:20
**amendment** [1] - 133:18
**amiss** [1] - 183:14
**amount** [3] - 134:22; 141:18; 158:1
**amplified** [1] - 168:15
**analysis** [3] - 129:9; 130:10; 132:12
**analytical** [1] - 139:18
**analyze** [1] - 129:7
**AND** [2] - 126:3, 16
**answer** [26] - 132:22, 24; 133:1, 7, 9-10, 25; 134:4, 7, 9, 15, 18;

135:5, 12, 20; 136:13; 139:25; 140:1, 13; 141:16; 150:5; 157:8; 160:24; 186:25
**answers** [3] - 150:9; 186:17; 191:3
**ANTHONY** [2] - 126:7, 19
**anticipate** [3] - 143:25; 159:21; 172:5
**anyway** [1] - 185:23
**appeal** [1] - 165:4
**appear** [3] - 137:7; 146:2; 153:9
**APPEARANCES** [1] - 126:14
**appearing** [1] - 137:13
**appellate** [1] - 165:4
**applicability** [1] - 140:5
**applicable** [6] - 128:23; 130:23; 138:23; 142:13; 164:10
**application** [3] - 127:21; 137:23; 138:12
**applications** [1] - 127:12
**applies** [1] - 136:18
**approach** [3] - 148:22; 150:1; 156:2
**approached** [1] - 128:18
**appropriate** [11] - 128:12; 144:15, 22; 149:18; 150:4; 151:24; 154:16; 157:9, 17; 177:4; 185:21
**appropriately** [2] - 135:11; 156:17
**April** [1] - 147:9
**area** [1] - 150:16
**arguably** [1] - 143:9
**argue** [6] - 144:9; 147:17; 175:21; 183:13; 189:23, 25
**argument** [2] - 158:6; 175:12
**arguments** [3] - 156:24; 173:11; 183:6
**aspect** [4] - 128:6, 8; 129:15; 144:3
**assist** [1] - 176:9
**associated** [2] - 147:25; 168:5
**assume** [7] - 133:21; 138:1; 148:7; 176:5; 189:16; 193:7
**assuming** [2] - 157:24

**attachments** [1] - 166:16
**attacked** [1] - 159:19
**attend** [1] - 192:6
**Attorney** [1] - 168:6
**attorney** [5] - 133:12; 168:3; 178:20; 191:1, 5
**attorneys** [4] - 143:20; 168:7; 178:25; 190:19
**Australia** [1] - 154:23
**available** [5] - 138:4; 139:4; 140:4; 181:10; 185:22

---

**B**

**backdrop** [3] - 128:10; 130:4; 142:15
**background** [1] - 159:20
**backtrack** [1] - 183:9
**Baker** [5] - 178:16; 179:10, 16; 181:3; 188:1
**bank** [2] - 177:17, 20
**Banks** [1] - 176:25
**Barnard** [5] - 187:23; 189:13; 191:12; 192:8
**based** [6] - 130:15; 138:18; 166:18; 168:1; 182:6; 184:25
**bear** [6] - 137:10; 140:8, 11; 146:1, 25; 165:15
**bearing** [1] - 134:15
**bears** [1] - 179:25
**BEFORE** [1] - 126:12
**belief** [3] - 144:13; 154:3; 164:1
**believes** [3] - 157:19; 169:14; 194:6
**below** [1] - 164:5
**bench** [4] - 127:9; 131:14; 148:22; 156:2
**best** [1] - 194:23
**between** [1] - 141:25
**beyond** [1] - 150:9
**binders** [1] - 169:12
**bit** [1] - 148:16
**Black's** [4] - 142:13; 143:9; 144:10; 148:19
**Blacks's** [1] - 149:5
**blowup** [1] - 154:18
**board** [4] - 158:2; 164:7; 166:2; 171:11

**bold** [2] - 172:11; 173:4
**boss** [8] - 157:20, 23; 158:4; 159:15; 160:21; 161:10; 163:15; 167:17
**bottom** [6] - 154:19; 156:6; 167:16, 18; 168:25; 176:15
**bought** [1] - 184:25
**bounds** [2] - 156:21; 157:5
**branch** [2] - 154:22
**briefly** [1] - 128:10
**bring** [4] - 157:7; 173:22; 183:17; 191:25
**BROCKOP** [1] - 126:7
**brought** [3] - 156:11; 166:6; 179:14
**bullet** [22] - 167:21; 168:25; 169:6; 170:7, 24; 171:4, 21; 172:10; 175:18, 23; 176:15, 25; 177:3, 7, 13; 178:6, 8, 12; 183:7; 184:2, 5, 14
**bullets** [1] - 170:14
**bunch** [1] - 183:22
**burden** [4] - 130:21; 139:23; 146:7; 188:25
**business** [16] - 162:11; 163:1; 173:13, 15; 174:4, 6, 24; 175:1, 4, 7; 178:19; 180:19; 186:5; 189:5; 195:17; 197:5
**buy** [1] - 180:7
**BY** [1] - 126:17

---

**C**

**cannot** [2] - 147:17; 193:2
**caption** [1] - 158:9
**captures** [1] - 152:11
**careful** [1] - 174:25
**carry** [1] - 132:19
**case** [47] - 128:4; 130:15, 21; 131:15, 20; 132:2, 8, 16-17, 22; 133:1, 19; 134:4, 6, 14; 135:2, 9, 18; 137:2, 13; 138:10, 15; 139:22; 140:20, 25; 143:17; 149:17, 20, 24; 150:8, 25; 157:5; 158:25; 159:8; 168:8; 175:21; 178:21; 182:8; 183:6, 20; 184:22; 189:11; 192:23; 194:25

cases [5] - 137:11; 138:17; 155:10; 156:24

categorically [1] - 131:17

category [2] - 148:11; 184:6

causes [4] - 142:16; 144:24

Cavanagh [2] - 137:12; 140:20

CAVANAGH [1] - 137:12

cc'd [1] - 195:22

Center [1] - 126:16

center [1] - 195:17

Central [2] - 126:6, 23

CEO [2] - 161:6

certain [13] - 127:15; 128:1, 3; 132:20; 138:20; 140:3; 142:1; 151:20; 152:12; 155:21; 157:2; 193:9; 194:13

certainly [5] - 135:1; 137:19; 143:25; 149:18; 185:21

certificates [1] - 184:25

chairman [2] - 158:2; 161:3

chance [5] - 150:20, 22; 162:10, 16; 164:15

change [2] - 164:7; 168:9

chapter [3] - 139:8

characterization [1] - 155:21

characterize [1] - 175:8

characterized [1] - 173:20

characterizing [2] - 156:19; 175:11

charge [1] - 144:23

charged [2] - 130:25; 144:4

charges [1] - 142:18

charging [2] - 127:23; 184:9

check [3] - 145:10; 179:13, 18

choosing [1] - 190:2

CHRISTOPHER [1] - 126:18

Circuit [1] - 137:16

circumstances [1] - 132:2

citations [2] - 187:8;

188:4

cited [2] - 137:11; 138:17

civil [1] - 133:6

claim [2] - 145:18; 161:8

claimed [1] - 173:21

claims [3] - 156:17, 19, 21

clarification [2] - 145:12; 190:14

clarified [1] - 192:10

clarify [5] - 147:11; 157:14; 166:11; 173:25; 195:10

clarity [1] - 151:6

clear [4] - 138:3; 146:20; 159:12; 163:14

clearly [3] - 135:4; 137:7; 181:19

clerk's [1] - 197:1

close [1] - 197:3

closed [1] - 178:19

closing [1] - 140:22

cocounsel [1] - 149:16

code [1] - 184:10

codefendants [1] - 149:16

cofounder [1] - 158:1

colon [1] - 171:8

coming [1] - 177:11

comment [1] - 190:10

commerce [7] - 130:14; 132:13; 135:23; 136:4; 180:12

commercial [1] - 135:17

commission [1] - 129:23

COMMISSION [2] - 126:4, 16

common [1] - 155:10

communicate [3] - 155:12; 159:13; 178:23

communicated [1] - 179:10

community [1] - 195:16

companies [1] - 147:15

company [4] - 154:20; 177:18; 179:5; 180:4

compared [1] - 134:10

compelled [1] - 140:21

complaint [16] - 127:22; 132:23, 25; 133:8, 24; 134:7, 10, 13, 20; 135:11, 19;

136:14; 180:1; 186:9, 12

complaints [1] - 195:23

complements [1] - 135:3

complete [4] - 163:3; 164:21; 175:2; 193:20

compliance [1] - 185:12

component [2] - 129:8; 135:18

computer [2] - 152:15; 153:5

concern [2] - 136:19; 160:5

concerned [3] - 128:20; 178:12; 186:18

concerning [6] - 128:6; 134:20; 135:10; 144:23; 165:10; 171:10

concerns [5] - 127:18; 128:9; 136:7; 141:24; 143:4

concluded [1] - 130:9

conclusion [7] - 131:21; 138:20, 25; 141:10

conclusions [3] - 139:17, 20; 158:22

conclusory [1] - 159:15

concrete [1] - 192:20

concreteness [1] - 165:9

condensed [1] - 131:4

conduct [2] - 142:25; 180:2

conducted [1] - 133:25

conferences [1] - 131:15

confidential [1] - 174:3

Confidential [1] - 174:9

confirm [1] - 176:25

confirmation [1] - 163:18

confuse [1] - 172:23

confused [2] - 149:9; 174:1

confuses [1] - 180:23

conjunction [2] - 136:13; 191:16

consent [1] - 166:2

consider [3] - 136:23; 144:19

considering [2] - 138:11, 13

consist [1] - 127:12

consistent [7] - 128:24; 138:8, 13; 165:8; 171:14; 195:13; 196:3

constitute [1] - 139:19

constituted [1] - 144:14

contain [1] - 151:9

contended [1] - 133:9

contents [1] - 148:8

contested [4] - 132:3; 157:21; 186:19

context [6] - 128:12; 130:16; 139:13; 171:1; 175:10; 177:5

Continued [1] - 161:19

contract [2] - 172:21; 175:24

contrary [5] - 138:19; 141:9; 151:10; 191:23; 192:22

control [3] - 147:1; 184:23; 196:1

controlling [1] - 161:3

cooperate [1] - 194:24

copies [2] - 152:1, 19

copy [21] - 152:4, 18, 25; 155:2, 5; 162:2, 11, 15, 17, 23; 164:17; 166:4, 6; 169:12; 173:12; 175:7; 195:5; 196:14

corner [2] - 153:10; 156:6

corporate [1] - 154:21

correct [10] - 138:1; 142:14; 146:16; 150:7; 153:16; 174:22; 177:25; 178:2; 182:14; 183:1

correctly [1] - 145:17

correspondence [2] - 146:23; 147:15

counsel [8] - 134:17; 149:8; 150:16; 168:4, 8; 169:4; 185:19; 192:6

counsel's [2] - 160:2; 168:1

counted [1] - 136:20

counter [1] - 193:5

counterclaims [1] - 157:8

counterquote [1] -

193:2

**couple** [3] - 161:18; 187:13; 190:16

**course** [4] - 151:21; 154:7; 190:11; 194:22

**COURT** [137] - 126:1; 127:3, 8; 142:7; 145:14, 20, 23; 146:5, 17; 147:1, 12, 19; 148:25; 149:2; 150:1, 18, 22; 151:12, 15, 18; 152:9, 17, 21; 153:3, 7, 18; 154:1; 155:4, 8, 18, 24; 156:3, 15; 157:15; 158:17; 159:1, 5, 14; 160:1, 4, 10, 20, 23; 161:6, 10, 12; 162:1, 8, 25; 163:4, 6, 16, 19; 164:9, 13, 18, 24; 165:21; 166:12, 21, 24; 167:6; 168:15, 20; 169:3, 14, 22; 170:2; 171:4, 13, 23, 25; 172:4, 18; 173:1, 23; 174:11, 17; 175:13, 22; 176:13, 20, 23; 177:6, 13, 24; 178:4, 10; 179:9, 21; 180:9, 22, 25; 181:5; 182:4, 11, 15, 20, 25; 184:1; 185:3, 15, 18; 186:1, 13, 17; 187:6, 20; 188:3, 7, 11, 15, 18, 22, 25; 189:9, 18, 24; 190:3, 5, 15, 23; 191:18, 21; 192:3, 13, 16, 20; 193:7, 17; 194:10, 21; 195:20; 196:11, 18, 23; 197:5

**court** [2] - 137:13; 165:4

**Court** [25] - 126:21; 127:9, 20; 128:17; 131:2, 10; 132:16; 133:18; 136:19, 23-24; 137:4; 138:7, 16; 143:25; 151:6; 152:2; 162:14; 166:8; 174:19; 178:20; 179:1; 186:11

**Court's** [14] - 127:19; 128:2; 136:8, 25; 137:8; 139:17; 152:18, 24; 155:6; 165:1, 6, 22; 167:9; 176:19

**courtesy** [1] - 193:11

**Courthouse** [1] - 126:6

**courtroom** [1] - 182:6

**cover** [2] - 145:5

**covered** [1] - 145:4

**crazy** [1] - 157:22

**created** [1] - 165:19

**credibility** [3] - 150:8, 10; 181:16

**criminal** [1] - 150:25

**criteria** [2] - 136:23; 140:14

**cross** [3] - 190:18; 191:20

**cross-examination** [1] - 190:18

**cross-examine** [2] - 191:20

**cull** [2] - 132:1

**cut** [1] - 190:16

**CV** [1] - 126:4

### D

**database** [1] - 139:7

**date** [10] - 127:11; 131:22; 144:22; 146:10, 15, 18; 147:4, 7; 148:8; 165:15

**dated** [2] - 146:14; 195:12

**dates** [3] - 136:16; 146:13; 162:4

**days** [1] - 160:1

**deadlines** [1] - 133:4

**dealt** [1] - 183:5

**debatable** [3] - 127:16; 135:25; 138:14

**decide** [3] - 131:9; 163:25; 172:1

**decided** [3] - 131:8; 137:14, 20

**deciding** [1] - 130:16

**decision** [19] - 127:19; 128:2, 7, 11, 25; 129:13; 130:5; 131:1; 135:4; 136:9, 25; 137:9; 139:17; 142:10; 149:9; 165:3; 182:6; 195:1

**decisions** [1] - 127:9

**declaration** [2] - 131:11; 149:24

**declarations** [1] - 149:15

**Defendant** [1] - 126:19

**defendant** [5] - 130:22; 133:22; 134:14; 139:23; 186:10

**Defendant's** [4] - 163:2; 164:19; 166:14, 17

**defendant's** [1] - 139:19

**Defendants** [1] - 126:9

**defense** [5] - 135:22; 150:24; 167:8; 168:3; 180:18

**defenses** [2] - 156:11; 168:1

**definition** [7] - 142:12; 143:9; 144:11, 17; 148:10, 19; 149:6

**defunct** [3] - 179:5, 7; 180:5

**delay** [1] - 186:3

**deleted** [5] - 171:6, 8; 178:2; 182:24; 184:16

**denial** [1] - 139:18

**denied** [2] - 127:20; 137:23

**DENIS** [1] - 126:13

**denying** [1] - 128:2

**dependent** [1] - 155:20

**deposed** [1] - 150:6

**deposition** [22] - 150:3, 11; 168:2; 187:8; 188:4; 189:13; 190:1, 21, 23; 191:11, 13, 15, 20, 22; 192:1, 5, 11, 21; 193:11, 17

**depositions** [5] - 150:15; 192:7; 193:9, 14

**described** [2] - 195:11, 13

**description** [1] - 155:13

**designate** [2] - 196:2, 6

**designated** [1] - 193:11

**designations** [1] - 142:3

**desk** [2] - 152:4, 16

**determination** [3] - 132:19; 141:19; 149:4

**determine** [1] - 137:6

**determined** [1] - 131:19

**determining** [3] - 132:12; 133:15; 136:19

**developed** [1] - 154:6

**develops** [2] - 143:23; 144:1

**dialogue** [1] - 196:25

**Dictionary** [4] - 142:13; 144:10; 148:19; 149:5

**dictionary** [1] - 143:9

**different** [6] - 135:15; 147:6; 158:6; 171:19; 186:18; 191:24

**difficulty** [1] - 178:21

**digitally** [1] - 196:15

**direct** [1] - 190:18

**directed** [1] - 127:21

**direction** [1] - 183:8

**directions** [1] - 179:1

**directly** [4] - 129:24; 140:2; 190:6

**directors** [1] - 164:7

**disagreement** [1] - 175:14

**disaster** [1] - 160:2

**discovery** [8] - 133:3; 134:1; 140:25; 174:22; 178:19; 183:17

**discretion** [2] - 164:6; 171:11

**discuss** [2] - 135:13; 187:2

**discussed** [6] - 138:16; 145:25; 146:13, 21; 161:16; 166:23

**discussion** [3] - 128:6, 9; 139:12

**disgorgement** [1] - 179:6

**dismissed** [2] - 156:13; 157:7

**dispute** [8] - 127:15; 128:22; 130:11; 135:8; 141:25; 149:10; 154:9; 186:22

**disputes** [1] - 140:3

**distinct** [1] - 159:20

**District** [3] - 126:22; 137:14

**DISTRICT** [2] - 126:1

**document** [27] - 136:14; 143:11, 13; 147:8; 148:9; 162:23; 164:20; 165:14, 17, 24; 169:10; 170:19; 171:1; 173:18, 22; 174:15; 175:3; 176:18; 188:8; 189:3; 195:10, 12, 22, 25

**documents** [17] - 142:9; 144:6, 12, 24; 145:19; 146:1, 3, 22; 148:18; 149:15, 23; 162:19; 168:14; 174:2; 187:14; 195:15; 196:1

**done** [12] - 128:24; 129:8; 132:9; 134:17; 135:13, 16; 164:4; 167:12; 187:11; 191:5, 24; 196:12

**door** [1] - 140:22

**dovetails** [1] - 141:5

**down** [4] - 147:9; 172:4; 173:3; 197:1

**draw** [1] - 158:22

**drop** [1] - 152:13

**DUNNIGAN** [23] - 126:18; 127:6; 152:20, 23; 154:17; 155:25; 160:3; 166:10, 13; 173:25; 174:8, 13; 186:7, 16; 187:17; 189:20, 25; 193:10, 15, 18, 22; 194:18; 196:8

**during** [18] - 131:14, 19; 132:11; 140:18; 151:21; 154:7; 161:4, 15; 168:15; 180:15; 181:7, 9; 182:16; 186:21; 190:5, 11; 194:22

**DX** [1] - 166:3

### E

**e-mailed** [2] - 152:3; 195:5

**e-mails** [1] - 163:18

**early** [1] - 151:8

**easily** [1] - 156:7

**EASTERN** [1] - 126:1

**edit** [1] - 159:24

**editorializing** [1] - 170:15

**effect** [5] - 127:19; 128:7; 129:23; 131:10; 174:25

**effort** [3] - 130:22; 159:23; 185:24

**either** [7] - 141:15; 143:8; 169:16; 181:14; 194:19; 196:8, 24

**electronically** [1] - 153:1

**element** [3] - 132:7; 136:4; 144:25

**elements** [9] - 129:20; 130:3; 135:10; 137:10; 139:22; 140:11; 142:23; 144:3; 149:11

**eleventh** [2] - 165:16; 196:4

**elicited** [1] - 136:4

**elucidate** [1] - 184:3

**elucidated** [1] - 135:11

**elucidation** [1] - 138:19

**end** [1] - 172:12

**endeavor** [1] - 147:2

**endeavoring** [1] - 129:16

**enforcement** [3] - 138:5, 24; 139:14

**engaged** [1] - 156:25

**engages** [1] - 172:22

**engaging** [1] - 156:23

**entailed** [1] - 130:13

**entertain** [1] - 144:22

**entertained** [1] - 134:2

**entire** [8] - 165:12; 174:24; 175:1; 176:17; 187:10; 188:8; 193:12; 194:4

**entitled** [6] - 139:5, 9; 143:8; 144:6; 154:13; 174:9

**entity** [1] - 179:4

**equally** [1] - 164:9

**erroneous** [2] - 144:13; 165:3

**ESQ** [2] - 126:17

**essence** [2] - 128:21; 132:15

**essentially** [7] - 127:25; 155:11; 161:4; 173:17; 179:7; 180:5; 195:16

**establish** [4] - 129:22; 141:16; 150:5; 158:24

**established** [5] - 129:3; 132:18; 135:5; 154:8; 157:19

**etcetera** [1] - 141:18

**evaluating** [1] - 133:20

**eve** [1] - 165:16

**event** [3] - 139:25; 141:11; 168:20

**events** [3] - 193:14, 20, 23

**evidence** [33] - 130:6; 140:16; 141:5, 18; 154:5; 156:25; 157:2; 158:22; 159:18, 20; 163:22; 165:12, 25; 169:15; 171:10; 173:14; 178:18; 180:3; 181:8,

14; 182:6, 15; 185:4; 186:8; 187:10; 189:3; 190:9, 24; 194:3

**evident** [1] - 138:25

**evidentiary** [2] - 143:21

**ex** [1] - 133:12

**ex-attorney** [1] - 133:12

**exact** [2] - 162:12, 22

**examination** [1] - 190:18

**examine** [2] - 191:20

**example** [2] - 134:11; 170:17

**excerpts** [2] - 193:1, 11

**exchange** [2] - 184:10; 185:11

**EXCHANGE** [2] - 126:3, 16

**excluded** [1] - 173:19

**executive** [1] - 174:3

**Executive** [1] - 174:9

**exemption** [5] - 128:20; 138:4, 22; 139:24; 140:4

**exemptions** [8] - 128:22; 129:2, 10-11; 130:19, 23

**Exemptions** [1] - 139:9

**exercised** [1] - 133:15

**Exhibit** [10] - 152:18, 24; 163:2; 164:19; 165:7, 23; 166:14, 17; 167:10; 196:9

**exhibit** [13] - 142:3; 155:6; 162:12; 169:11; 174:9; 189:12, 16; 191:16, 20; 196:2, 6, 9

**exhibits** [10] - 142:1; 143:6; 146:23; 161:14; 166:6, 20; 174:13; 189:15; 191:14; 192:1

**existence** [4] - 158:13, 17

**explain** [1] - 162:4

**explained** [1] - 164:25

**exploring** [1] - 192:4

**expression** [1] - 154:1

**extent** [5] - 127:15; 135:9, 24; 137:3; 141:12; 143:5; 144:5; 146:7; 147:14; 148:5; 149:8, 11; 156:19; 186:19, 23

**extra** [2] - 152:19;

155:3

### F

**F.3d** [2] - 137:12, 16

**face** [3] - 146:2; 165:15, 19

**facie** [11] - 128:6; 129:15; 130:15, 21; 131:18; 132:16; 135:2, 10, 18; 139:22

**facilities** [1] - 130:2

**facility** [1] - 130:14

**fact** [21] - 129:2; 130:12, 17, 24; 131:13, 16; 132:13; 133:16; 135:7; 136:5, 15; 140:2; 141:8; 143:17; 146:17; 150:5; 157:21; 169:21; 179:6; 183:17; 184:24

**factor** [1] - 133:20

**factors** [3] - 136:19; 140:11, 20

**facts** [7] - 132:21; 136:23; 137:2; 141:1; 142:25; 163:25; 170:12

**factual** [3] - 128:22; 137:4; 140:14

**failed** [1] - 178:25

**fair** [3] - 163:16; 180:2; 185:1

**fairly** [1] - 142:23

**faith** [3] - 138:23; 154:3; 164:1

**fall** [2] - 148:11; 149:5

**falls** [1] - 184:5

**falsehood** [1] - 158:16

**far** [6] - 137:3; 157:10; 161:14; 165:8; 186:17; 194:25

**fashion** [2] - 189:3; 190:11

**fault** [2] - 183:7, 19

**fax** [3] - 146:3, 15, 18

**February** [1] - 195:12

**Federal** [1] - 126:23

**federal** [1] - 133:6

**Festo** [2] - 175:24; 176:5

**few** [8] - 178:14; 179:12; 181:19, 23; 182:23; 187:11; 194:8

**figure** [1] - 160:4

**filed** [11] - 129:23; 130:8; 132:23, 25;

133:10; 134:12; 157:8; 162:14; 169:7, 9; 183:15

**filing** [1] - 177:12

**filings** [1] - 149:13

**final** [1] - 158:5

**Financial** [1] - 126:16

**financials** [1] - 180:7

**findings** [1] - 132:11

**fine** [9] - 140:25; 157:1; 158:3; 166:21; 172:17; 175:17; 182:17; 187:10; 196:7

**finish** [1] - 187:15

**finished** [1] - 166:24

**firing** [1] - 161:4

**firm** [4] - 167:22; 168:10, 12, 14

**first** [40] - 127:18; 128:1; 129:9, 12; 142:18; 143:13; 144:2, 19; 145:3, 10, 15, 18; 149:7; 150:24; 152:8; 153:7; 154:10; 167:21; 169:7; 171:5; 172:21; 174:5; 176:13, 25; 178:6; 180:13; 182:13, 16; 183:3, 7; 184:1, 13; 185:13; 186:4; 188:14; 189:2, 5; 197:1, 5

**firsthand** [2] - 191:22; 192:22

**firstly** [2] - 131:25; 174:19

**fits** [1] - 143:9

**five** [3] - 140:20; 194:8; 197:3

**floor** [1] - 197:1

**focus** [1] - 128:20

**follow** [5] - 150:4, 25; 154:5; 178:25; 191:7

**followed** [1] - 190:19

**following** [2] - 131:23; 176:10

**follows** [2] - 147:20; 171:7

**footnote** [1] - 139:10

**foreign** [13] - 154:12, 15; 158:11, 13, 15, 18-19; 159:3, 8; 160:15; 162:5, 12, 15

**forget** [2] - 139:24; 142:4

**forgive** [1] - 167:11

**form** [3] - 152:11; 156:5; 169:8

**forth** [11] - 133:4; 136:25; 137:21; 138:23; 140:20; 142:13; 154:4; 171:9, 11; 179:25; 180:12

**forward** [2] - 130:22; 183:2

**foundation** [3] - 146:8; 163:12

**four** [3] - 139:8; 143:6

**frame** [5] - 140:18; 180:16; 181:8; 182:16

**framed** [5] - 133:1, 24; 134:6; 179:23; 184:15

**frames** [1] - 134:25

**frankly** [2] - 165:17; 196:5

**fraud** [3] - 143:4; 155:14; 156:16

**fraudulent** [1] - 142:25

**free** [1] - 139:1

**fresh** [1] - 165:14

**front** [1] - 186:25

**full** [2] - 167:25; 194:16

**function** [1] - 184:4

**functioning** [1] - 179:4

**funds** [1] - 160:16

## G

**game** [1] - 185:1

**general** [1] - 192:3

**generally** [2] - 127:12; 157:10

**generated** [1] - 165:18

**gentlemen** [3] - 196:18, 23; 197:6

**germane** [1] - 184:3

**given** [3] - 134:3; 175:4; 180:6

**good-faith** [2] - 154:3; 164:1

**grant** [1] - 133:18

**greatly** [1] - 129:13

**ground** [1] - 137:24

**guess** [4] - 153:23; 160:13; 177:10; 188:20

**guidance** [2] - 148:16; 149:13

**Gumport** [1] - 195:18

**guy** [1] - 184:20

## H

**half** [3] - 179:11; 182:2, 12

**hand** [4] - 148:13; 152:2; 153:10; 166:8

**handle** [1] - 187:3

**hard** [6] - 143:19, 21; 150:13; 169:21; 170:21; 181:21

**hardly** [1] - 180:4

**HARRY** [1] - 126:21

**Hazen** [1] - 139:11

**heading** [1] - 176:24

**headquarters** [1] - 154:21

**hear** [5] - 144:16; 149:3; 150:23; 158:21; 167:6

**help** [3] - 154:4, 10; 189:10

**helpful** [1] - 149:1

**hide** [1] - 169:21

**hiding** [1] - 170:12

**highlight** [1] - 190:4

**highlighted** [1] - 183:23

**highlighting** [1] - 157:2

**highlights** [2] - 162:5; 190:2

**highly** [1] - 178:17

**history** [2] - 133:2; 134:3

**honest** [1] - 146:5

**Hong** [1] - 154:22

**Honor** [91] - 145:13, 17; 146:16, 20; 147:11; 148:17, 23; 149:8; 150:20; 151:4; 152:10, 20; 153:2, 4, 11; 154:17; 155:7, 15, 23; 157:12; 158:14, 23; 159:24; 160:3, 7; 161:11, 17; 162:11; 163:3, 5, 13; 164:3, 12; 165:13; 166:1, 10; 167:4; 168:13, 18, 24; 169:11, 18; 170:13, 25; 172:3; 173:11, 18; 174:8, 12; 175:6, 12, 16; 176:12, 21; 177:10; 178:5; 180:21; 182:18; 183:2, 4, 9; 184:22; 185:9, 13, 17; 186:7, 16; 187:5, 17; 188:6, 13, 24; 189:6, 19;

192:10, 18, 25; 193:10, 13, 18-19; 194:7; 195:4, 21; 196:7, 10, 17, 21-22; 197:4

**HONORABLE** [1] - 126:13

**Honorable** [2] - 173:12; 175:6

**hope** [3] - 141:13; 150:18; 185:21

**hour** [3] - 165:12; 185:22; 196:4

**huge** [2] - 180:19; 183:23

**HURLEY** [1] - 126:13

**Hurley** [2] - 173:12; 175:7

**hypothetical** [1] - 141:9

**hypothetically** [1] - 180:15

## I

**idea** [8] - 154:12; 158:8; 160:24; 161:1; 165:19; 171:25; 185:16; 186:22

**impact** [1] - 139:1

**implicated** [1] - 136:5

**implicating** [1] - 135:24

**import** [1] - 149:9

**important** [7] - 128:4; 131:1; 132:20; 142:16; 144:7; 186:4, 20

**impression** [1] - 189:22

**improper** [2] - 173:10; 182:11

**INC,SCOTT** [1] - 126:7

**include** [1] - 187:2

**included** [1] - 165:23

**including** [2] - 149:13; 155:19

**incomplete** [1] - 164:20

**incorrect** [1] - 131:23

**independent** [2] - 132:2; 144:24

**indicate** [2] - 130:7; 177:13

**indicated** [6] - 130:4; 132:16; 140:10; 144:23; 163:8; 177:16

**indicates** [6] - 139:2, 13; 142:9; 146:10; 157:25; 169:20

**indicating** [1] - 170:4

**indication** [3] - 139:6, 8, 11

**indirectly** [1] - 129:24

**inflammatory** [1] - 159:16

**information** [13] - 130:9; 140:19; 141:3; 146:9; 147:3; 154:3, 6; 157:25; 164:2; 190:8; 191:6, 23; 192:22

**Ingram** [1] - 188:2

**initial** [1] - 178:15

**ink** [1] - 187:15

**input** [3] - 133:11; 160:5

**insofar** [1] - 132:16

**instance** [3] - 129:12; 144:5; 158:8

**instances** [1] - 147:22

**instead** [1] - 190:1

**instruction** [2] - 135:14; 186:21

**integrated** [1] - 131:4

**integration** [15] - 136:11, 18, 24; 137:6, 10; 139:16; 140:7, 12, 21; 141:3, 7, 11, 20

**intelligent** [1] - 195:1

**intend** [1] - 194:2

**intends** [1] - 151:8

**intent** [27] - 141:24; 142:10-12; 143:6, 8, 10, 19; 144:6, 12, 14, 18; 145:1, 16, 21; 146:2, 24-25; 147:17, 21, 23; 148:10, 22; 157:4; 181:2, 7

**interest** [1] - 134:5

**interesting** [1] - 177:9

**international** [5] - 163:17; 170:2, 5; 173:5, 14

**internet** [1] - 182:8

**interstate** [9] - 130:2, 14; 132:13; 135:17, 23-24; 136:4; 180:12

**introduce** [5] - 143:11; 145:18; 146:8; 148:20; 173:17

**investigated** [1] - 183:15

**investment** [1] -

**Investment** [1] - 176:25

**investor** [3] - 160:16; 177:16

**Investors** [2] - 154:15; 158:10

**investors** [7] - 134:24; 136:3; 155:1; 156:20; 159:7; 175:4; 184:25

**involved** [2] - 138:17; 180:12

**involvement** [1] - 184:23

**irrelevant** [4] - 181:19; 184:2; 192:14; 194:13

**IRS** [1] - 157:18

**iShop** [25] - 147:25; 156:20; 162:3; 167:22; 168:9, 20; 169:7; 177:15; 178:14, 18, 22; 179:3, 8, 17; 180:17; 181:7, 25; 183:10; 184:6; 193:19, 23; 195:23

**iShop's** [3] - 160:16; 173:13; 175:7

**ISHOPNOMARKUP.COM** [1] - 126:7

**Islip** [2] - 126:6, 23

**issue** [22] - 129:17; 130:17; 131:19; 132:12; 133:11; 136:10; 139:15; 141:10; 145:16; 165:10; 167:13; 180:23; 184:8, 11; 185:12; 186:19; 187:5, 7

**issued** [1] - 131:10

**issues** [15] - 127:10, 15; 128:3; 129:2; 130:17; 131:9, 12; 133:13, 24; 134:6; 135:15; 145:25; 151:5; 172:9; 179:23

**item** [6] - 127:18; 141:23; 158:9; 165:12; 181:5

**items** [9] - 127:16; 128:12; 132:13; 135:2; 143:24; 167:10; 181:10; 182:2; 186:14

**itself** [2] - 138:22; 180:20

**J**

**January** [1] - 132:25

**Japan** [1] - 154:24

**judge** [2] - 137:15; 138:14

**Judge** [7] - 127:6; 138:2; 152:5, 7; 173:12; 175:7; 190:20

**Judge's** [1] - 151:11

**judgment** [15] - 127:21; 128:3, 14; 129:17; 131:11, 20; 132:1, 5, 17; 135:3; 137:5; 139:19; 149:15; 151:2

**judicial** [5] - 135:6, 12; 186:14; 189:4, 6

**July** [1] - 139:7

**jurors** [1] - 184:24

**jury** [53] - 127:14; 131:9; 135:7, 14; 138:9; 139:21; 140:6; 141:1, 11, 13; 143:12; 144:10, 16-17; 148:24; 149:3, 12; 150:7; 154:4, 11; 155:9, 13, 20; 157:9; 158:20; 161:15; 163:25; 164:2; 165:7; 167:9; 169:16; 172:1; 174:23; 176:3, 10; 179:2, 22; 181:13, 17; 183:25; 184:20; 186:3, 20; 188:11; 189:23; 190:1, 6-7, 9; 191:7; 192:12; 194:14; 195:1

**jury's** [1] - 184:4

**juxtaposition** [1] - 148:9

**juxtapositioning** [1] - 137:2

**K**

**keep** [1] - 176:18

**kept** [1] - 153:14

**key** [2] - 133:13, 20

**kind** [1] - 186:4

**kinds** [1] - 183:25

**KNIGHT** [105] - 126:7, 19; 127:7; 142:6; 150:20; 151:13; 152:3, 6, 15; 153:1, 4, 11, 22; 155:2, 15, 22; 156:14; 157:12; 160:7; 161:8, 17; 162:2, 10, 22; 163:2, 5, 13, 17;

164:3, 11, 15, 19; 166:1, 9, 19, 22; 167:1, 19; 168:9, 13, 18; 169:11, 23; 170:9, 25; 171:12, 15; 172:2, 15, 19, 24; 173:2, 7, 21; 174:6, 12; 175:2, 16; 176:12, 16; 177:21; 179:10; 180:24; 181:1, 25; 182:9, 12, 21; 183:1, 9, 21; 184:18; 185:2, 24; 187:5, 7, 19, 22; 188:5, 9, 13, 16, 20, 23; 189:8, 12, 19; 190:4, 13, 21; 191:9, 19, 25; 192:14, 18, 24; 193:13, 19; 194:7; 195:4, 8, 18; 196:7, 16; 197:4

**Knight** [55] - 131:16; 133:9; 137:18; 140:5, 17; 142:7, 11; 143:5, 20; 145:18; 146:1, 17; 147:22, 25; 149:14, 19, 22; 151:7, 12; 152:25; 155:5, 19; 156:11, 17, 19, 22; 157:1; 160:25; 165:2, 17; 166:13, 15; 169:6; 173:17, 25; 174:15, 21; 175:13, 15; 178:24; 179:9; 180:6; 183:5; 185:18; 187:2; 189:22; 192:4, 6; 193:8, 12; 194:5; 195:11, 24; 196:24

**Knight's** [2] - 156:5; 165:9

**knock** [1] - 159:14

**knows** [1] - 192:13

**Kong** [1] - 154:22

**L**

**label** [4] - 128:5; 146:25; 148:14; 159:19

**labeled** [1] - 148:4

**labels** [1] - 147:1

**lack** [1] - 138:18

**language** [12] - 137:13; 153:14; 155:22; 157:16; 159:11; 164:5; 167:2; 171:2; 172:16; 177:11; 181:18; 196:19

**large** [1] - 183:11

**last** [10] - 142:4; 170:18; 171:21; 175:23; 176:14; 177:6; 182:18; 183:3; 184:14

**late** [1] - 133:8

**law** [8] - 136:18; 138:3, 8; 141:6; 167:22; 168:10, 12

**Law** [6] - 139:5; 142:13; 144:10; 148:19; 149:5; 190:17

**lawsuit** [3] - 156:12; 157:7; 178:24

**lay** [2] - 146:8; 155:9

**layman's** [3] - 155:12, 16

**lead** [1] - 176:6

**lead-in** [1] - 176:6

**least** [1] - 139:21

**leave** [3] - 141:13; 181:22; 189:1

**led** [1] - 139:18

**Lee** [1] - 139:11

**left** [2] - 156:6; 195:14

**legal** [1] - 141:10

**legitimacy** [1] - 137:19

**lengthy** [2] - 165:14; 194:12

**letter** [14] - 142:10; 143:8, 10; 144:6, 12, 18; 145:16, 21; 146:2; 147:21, 23; 148:1, 10, 21

**letters** [13] - 141:24; 142:9, 12; 143:5, 19; 144:14; 145:1; 146:24; 147:16, 18; 181:2, 7

**liberality** [1] - 133:14

**lie** [20] - 167:20; 168:25; 169:19; 170:8, 11, 15, 17, 24; 171:6, 15; 172:12, 23; 173:4; 174:18; 175:19; 176:17; 177:1; 178:1

**lied** [8] - 153:14; 169:25; 170:14; 172:11; 175:23; 178:6

**lies** [18] - 153:15, 21; 154:12, 15, 25; 155:12, 19; 156:20, 23; 158:8, 11; 159:15; 160:12, 17, 19; 163:15; 167:13

**limine** [5] - 127:13; 138:2, 14; 166:15; 183:4

**limit** [1] - 127:13

**limited** [1] - 168:4

**Lindsay** [1] - 167:25

**line** [3] - 170:18; 176:13; 179:14

**listen** [1] - 163:20

**litigant** [1] - 138:6

**litigants** [1] - 138:18

**litigation** [1] - 149:25

**live** [1] - 175:15

**loaded** [1] - 160:6

**look** [10] - 138:7; 142:16; 148:23; 150:23; 154:17; 157:13; 161:17; 165:4; 174:13; 182:7

**looked** [1] - 153:3

**looking** [5] - 144:24; 154:13; 158:8; 160:11; 181:18

**lower** [2] - 137:13; 153:10

**lying** [5] - 153:14; 156:9; 157:4, 11; 171:16

**Lynch** [1] - 177:19

## M

**Magistrate** [1] - 167:25

**mail** [2] - 130:2; 166:2

**mailed** [2] - 152:3; 195:5

**mails** [2] - 135:22; 163:18

**main** [1] - 180:10

**maintains** [1] - 154:20

**Major** [1] - 176:24

**major** [3] - 159:23; 177:17; 181:4

**man** [1] - 163:20

**management** [1] - 164:7

**manner** [1] - 153:17

**mark** [3] - 165:6, 11

**marked** [4] - 146:23; 152:18; 155:6; 174:9

**marking** [1] - 165:22

**markings** [1] - 146:3

**material** [7] - 129:1; 130:17; 132:12; 136:21; 142:25; 143:4; 151:9

**materials** [1] - 152:12

**matter** [10] - 128:8; 129:5; 134:19; 138:3; 140:15; 141:6; 171:17; 174:20; 183:14; 192:3

**matters** [2] - 128:19; 131:8

**McCullough** [5] - 167:23; 168:5, 7, 11,

21

**mean** [11] - 147:10; 149:16; 154:7; 157:21; 164:24; 180:6; 186:3; 190:10; 191:23; 193:24; 194:21

**means** [2] - 135:23; 141:20

**meant** [1] - 176:9

**mechanically** [1] - 151:25

**meet** [3] - 148:21, 23; 196:18

**Mehringer** [5] - 166:3; 168:3, 6, 10, 21

**memorandum** [2] - 154:19; 162:3

**mention** [1] - 131:2

**mentioned** [5] - 142:1; 143:6; 176:16; 186:8

**mere** [1] - 157:20

**merely** [1] - 190:1

**Merrill** [1] - 177:19

**Micro** [1] - 188:2

**middle** [1] - 178:13

**might** [6] - 128:18; 132:3; 145:6; 174:1, 14; 189:20

**MIKE** [1] - 126:8

**Mike** [1] - 195:18

**million** [5] - 178:14; 179:4, 11; 182:2, 12

**millions** [1] - 180:18

**mind** [1] - 145:3

**mind-set** [1] - 145:3

**mine** [5] - 152:8; 153:4; 157:13; 167:1; 183:22

**minute** [2] - 151:16; 162:8

**minutes** [2] - 194:8

**miscommunication** [1] - 189:21

**misconduct** [7] - 156:12, 25; 157:5; 169:20; 170:16, 22; 172:22

**misrepresentation** [3] - 142:24; 143:4; 153:16

**Misrepresentations** [2] - 154:14; 158:9

**misrepresentations** [8] - 144:4; 154:25; 155:11; 159:7; 160:15; 180:14; 185:1

**missing** [2] - 146:12; 180:9

**misstating** [1] - 195:19

**mistrial** [1] - 182:4

**modicum** [1] - 137:19

**modify** [3] - 133:6; 134:4; 167:1

**moment** [1] - 137:8; 139:16; 164:9

**Monday** [6] - 185:13; 186:2, 6; 187:18; 197:7, 9

**money** [3] - 134:22; 138:6; 161:4

**months** [7] - 178:14; 179:5, 13, 24; 181:19, 23; 182:23

**morning** [4] - 151:8; 185:14; 186:2, 6

**most** [5] - 137:4; 144:11; 146:14; 147:22; 161:3

**motion** [15] - 128:2, 17; 130:7; 132:17; 133:5, 20; 134:2; 138:2, 14; 139:19; 162:14; 165:12; 167:25; 175:8

**motions** [2] - 127:13; 137:5

**MOUSSA** [1] - 126:8

**movant** [2] - 132:6; 133:19

**move** [6] - 150:17; 151:6; 162:6; 169:18; 172:19

**moved** [1] - 166:14

**moving** [3] - 163:13; 164:3; 178:5

**MR** [201] - 127:5-7; 142:6; 145:12, 15, 21, 24; 146:16, 20; 147:11, 13; 148:16; 149:1, 7; 150:14, 20; 151:4, 13; 152:1, 3, 5-6, 10, 15, 20, 23; 153:1, 4, 11, 22; 154:17; 155:2, 7, 9, 15, 22, 25; 156:1, 4, 14, 16; 157:12; 158:14, 23; 159:3, 12, 24; 160:3, 7-8, 18, 22; 161:1, 8, 11, 17; 162:2, 10, 18, 22; 163:2, 5, 13-14, 17; 164:3, 11, 15, 19, 22; 165:13; 166:1, 7, 9-10, 13, 19, 22; 167:1, 4, 12, 19-20; 168:9, 12-13, 18, 24; 169:4,

11, 18, 23-24; 170:9, 13, 25; 171:12, 15, 21, 24; 172:2, 9, 15, 19-20, 24-25; 173:2, 7-8, 21, 25; 174:6, 8, 12-13; 175:2, 6, 16, 18; 176:12, 16, 21, 24; 177:10, 21; 178:3, 5, 11; 179:10; 180:2, 21, 24; 181:1, 25; 182:9, 12, 18, 21-22; 183:1, 9, 13, 21; 184:18, 22; 185:2, 9, 17, 24; 186:7, 16; 187:5, 7, 17, 19, 22; 188:5, 9, 13, 16, 20, 23; 189:8, 12, 19-20, 25; 190:4, 13, 21; 191:9, 19, 25; 192:4, 14, 18, 24; 193:10, 13, 15, 18-19, 22; 194:7, 18; 195:4, 7-9, 18, 21; 196:7, 13, 16, 21; 197:4

**multiple** [1] - 183:18

**must** [6] - 129:21; 136:19, 23-24; 146:7; 170:1

## N

**N.Y** [1] - 126:6

**name** [2] - 146:1; 195:6

**nature** [5] - 127:12, 14; 165:1; 168:16; 186:22

**necessarily** [2] - 153:12; 154:8

**necessary** [1] - 128:12

**need** [4] - 169:5; 188:5, 8; 192:24

**needs** [3] - 152:5; 188:7; 193:16

**negate** [1] - 129:3

**Neissani** [1] - 161:9

**NEISSANI** [1] - 161:9

**never** [6] - 133:5; 150:6; 162:16; 164:15; 165:15; 175:4

**NEW** [1] - 126:1

**New** [6] - 126:17, 23; 137:14; 154:21

**next** [8] - 136:6; 154:18; 162:7; 170:24; 175:18; 178:8; 188:20; 196:9

**Noakes** [3] - 187:9, 25; 192:7

**nobody** [1] - 191:9

**nonregistration** [1] - 132:14

**normally** [1] - 186:19

**note** [5] - 132:20; 139:3; 165:13, 20; 178:20

**noted** [3] - 128:13; 165:21; 167:24

**nothing** [5] - 131:9; 147:16; 174:21; 184:12; 185:6

**notice** [5] - 135:6, 12; 186:14; 189:4, 6

**noticed** [1] - 181:2

**notwithstanding** [1] - 146:18

**November** [1] - 132:24

**nuances** [2] - 141:12; 147:2

**number** [29] - 131:21; 133:3; 134:8; 136:2; 137:11; 138:17; 140:1; 154:4; 157:6, 20; 158:9, 13; 167:20; 168:25; 169:19; 170:8, 17; 171:6; 172:7, 12; 173:4; 174:14, 18; 175:19, 23; 177:1; 181:10; 183:3; 196:9

**numbered** [2] - 156:4, 6

**numbers** [1] - 153:9

**numerous** [2] - 131:14; 140:25

**nutshell** [2] - 139:15; 144:2

## O

**o'clock** [1] - 187:21

**object** [6] - 148:22; 149:2; 153:8, 12, 20; 155:15

**objected** [1] - 164:20

**objecting** [3] - 155:17; 162:18; 166:4

**objection** [6] - 143:10; 153:24; 165:9, 20-21; 166:5

**objectionable** [1] - 184:15

**objections** [8] - 160:8; 162:9; 163:15; 166:17; 167:5; 183:4; 194:19; 195:25

**obligation** [1] - 138:7

**obligations** [1] - 138:13

**observation** [1] - 156:8

**obviously** [3] - 145:8; 167:15; 170:23

**occurred** [4] - 140:12; 141:17; 194:17, 25

**occurs** [1] - 130:21

**OF** [2] - 126:1, 9

**offer** [3] - 129:25; 143:1, 12

**offered** [3] - 130:11; 132:14; 165:16

**offering** [2] - 140:19; 154:19

**offerings** [11] - 131:3; 134:16, 21, 23; 136:20; 140:12, 17; 141:17, 21; 167:21; 180:11

**office** [3] - 154:24; 192:17; 197:1

**offices** [19] - 154:13, 15, 22; 158:12, 15, 18, 20; 159:4, 8; 160:15; 162:5, 12, 15; 163:17; 170:2, 5; 173:5, 14

**old** [3] - 160:1; 183:6

**omission** [2] - 142:24; 143:5

**Omissions** [2] - 154:14; 158:10

**omissions** [1] - 155:11

**once** [3] - 130:21; 157:3; 191:5

**one** [50] - 128:20; 130:5, 13, 23; 131:14, 25; 133:18; 134:5, 11; 136:20, 22; 137:11; 138:15; 140:24; 142:4, 24; 144:3; 145:24; 151:1; 152:15, 18; 154:4, 25; 156:15; 157:7; 158:2, 11-12, 19; 161:6; 162:7; 166:1, 3; 167:20, 24; 171:22; 175:9; 178:15, 17, 22; 181:3; 182:7; 183:3; 187:5; 188:13; 190:19; 192:24; 196:17

**one's** [1] - 134:5

**ones** [5] - 148:14; 153:8, 19; 188:9

**open** [1] - 171:19

**opening** [16] - 151:9, 22, 24; 154:23; 157:17; 158:7, 21; 160:6; 163:21; 169:17; 176:10; 186:8; 188:14, 21;

190:5

**openings** [2] - 188:17, 19

**operating** [1] - 180:5

**opportunity** [1] - 192:6

**opposition** [1] - 149:14

**order** [3] - 186:4; 189:5; 197:5

**Order** [1] - 190:17

**orders** [1] - 140:25

**otherwise** [4] - 132:3; 133:6; 181:15; 197:2

**ought** [1] - 150:1

**outright** [1] - 158:16

**overview** [1] - 158:5

**overwhelming** [1] - 133:23

**owed** [1] - 175:24

**OWEN** [1] - 126:22

**owns** [1] - 158:2

## P

**p.m** [2] - 126:11; 187:18

**packet** [2] - 192:16; 197:2

**page** [38] - 137:9; 153:9; 154:13, 18; 160:13; 162:2, 4, 7, 9, 12, 25; 163:7, 13; 164:3; 167:15, 18, 21; 168:24; 169:3, 5-6, 19; 170:13; 171:5; 172:9, 18; 173:3; 176:15, 22, 24; 178:1, 6; 182:19; 184:1, 17

**pages** [4] - 156:7; 187:12, 24; 188:4

**paid** [1] - 178:25

**paper** [5] - 152:1, 10; 156:5; 165:14; 196:14

**papers** [4] - 136:1; 150:16; 166:17; 179:11

**paragraph** [9] - 134:13, 15; 135:19; 154:20; 172:13; 177:7; 182:24

**paragraphs** [3] - 186:9, 11; 187:1

**parenthetical** [1] - 134:3

**parenthetically** [1] - 139:3

**part** [16] - 129:9;

130:10; 139:18; 140:8;
141:5; 149:19; 154:10;
170:19; 175:19; 182:10,
14; 183:21; 184:17;
188:18; 189:5; 193:25
**partial** [2] - 129:17
**partially** [1] - 143:3
**particular** [9] -
128:25; 132:5, 7;
144:25; 153:19; 154:19;
176:6; 179:25
**particularly** [3] -
138:4; 157:22; 159:22
**parties** [3] - 141:25;
150:23; 185:10
**parts** [9] - 127:25;
129:8; 187:8; 190:16;
191:15; 193:2, 4, 20
**party** [3] - 132:4;
147:4; 151:1
**passed** [1] - 137:22
**Patisso** [4] - 195:5,
14, 23; 196:3
**pay** [2] - 179:1; 193:8
**paying** [1] - 179:20
**pejorative** [1] - 157:3
**penalty** [2] - 179:6
**pending** [1] - 156:17
**people** [4] - 155:9;
161:4; 180:7; 195:22
**percent** [3] - 168:17
**perhaps** [4] - 128:19;
135:1; 143:25; 144:13
**period** [4] - 131:4;
145:6; 161:5; 195:2
**permit** [2] - 143:10;
148:11
**permitted** [2] -
190:10, 12
**person** [3] - 129:24;
156:15; 191:3
**personally** [1] - 157:1
**perspective** [1] -
145:24
**perusing** [1] - 181:20
**phase** [1] - 131:20
**Philip** [2] - 187:23;
189:13
**phrase** [4] - 146:6;
173:5, 9; 178:6
**phrases** [1] - 160:6
**pick** [1] - 194:5
**pinpoint** [2] - 187:7;
188:3
**pinpoints** [1] - 188:1
**pivotal** [1] - 144:21

**place** [1] - 128:12
**Place** [1] - 179:19
**placed** [2] - 140:6;
191:6
**placement** [3] - 162:3;
169:8, 10
**plaintiff** [6] -
127:20; 145:10; 151:5;
187:9; 189:4; 192:25
**Plaintiff** [2] - 126:5,
15
**plaintiff's** [3] -
150:24; 152:7
**Plaintiff's** [1] -
196:8
**plaintiffs** [1] -
136:14
**plan** [7] - 162:11;
173:13, 15; 174:24;
175:1, 5, 8
**plans** [2] - 163:1;
166:8
**play** [4] - 130:20;
192:11; 194:6, 20
**Plaza** [1] - 126:23
**pleading** [3] - 133:15,
17, 21
**pleadings** [1] - 179:23
**point** [39] - 129:11,
14; 132:5; 135:6;
137:18; 138:11, 19;
139:15; 140:2; 141:3;
147:20; 148:4; 149:7;
151:16, 20; 154:2;
160:2; 167:22; 168:25;
169:6; 170:7; 171:22;
175:18, 23; 176:25;
177:3, 7, 14; 178:6, 9,
12; 180:9; 183:8;
184:2, 5, 14; 190:20;
195:11
**pointed** [1] - 169:4
**pointing** [1] - 190:2
**points** [7] - 170:14,
24; 171:5; 172:10;
176:15; 181:16; 184:13
**poor** [1] - 146:6
**Port** [1] - 154:21
**portion** [3] - 128:8,
20; 194:17
**portions** [3] - 194:5,
13
**position** [9] - 131:7;
137:25; 142:8; 148:18;
149:21; 157:22; 158:14;
159:17; 167:10
**possible** [1] - 129:4

**possibly** [3] - 139:21;
147:21; 190:18
**potential** [1] - 177:16
**PowerPoint** [1] -
152:12
**practice** [3] - 167:25;
168:17; 175:8
**precisely** [1] - 138:24
**preclude** [4] - 139:20;
148:24; 163:11
**predate** [1] - 147:4
**predates** [1] - 148:7
**predicated** [1] -
128:15
**predictable** [1] -
143:24
**prejudice** [2] -
133:16, 23
**prejudicial** [1] -
133:22
**preliminarily** [1] -
156:8
**preliminary** [4] -
130:10; 135:14; 174:20;
186:21
**prepare** [1] - 186:13
**prepared** [4] - 133:11;
135:6, 12; 153:22
**prescinding** [1] -
139:16
**presence** [1] - 149:3
**present** [8] - 128:5;
141:12; 149:12; 162:16;
164:11; 191:10; 194:14
**presentation** [1] -
194:4
**presentations** [2] -
137:4; 196:20
**presented** [13] -
127:14; 128:17; 130:6,
18; 137:3; 138:9;
139:21; 140:16, 19,
23-24; 179:22; 189:11
**presently** [4] - 128:9;
139:12; 141:6; 156:16
**pretty** [1] - 152:11
**preview** [1] - 158:24
**previous** [1] - 181:2
**previously** [3] -
128:13; 137:5; 174:8
**prima** [11] - 126:6;
129:15; 130:15, 21;
131:18; 132:16; 135:2,
10, 18; 139:22
**primary** [1] - 160:5
**print** [1] - 187:13

**printed** [2] - 153:5;
165:14
**printer** [1] - 187:15
**printing** [2] - 165:17; **10**
187:14
**private** [5] - 138:6,
17; 162:3; 169:7, 10
**privilege** [1] - 168:2
**privy** [1] - 155:20
**Pro** [1] - 126:19
**pro** [3] - 179:2;
192:17; 197:2
**problem** [22] - 127:25;
129:1; 131:13; 146:11;
155:18; 156:10; 159:1;
160:3; 161:16; 164:12;
167:19; 170:4; 175:19;
178:1; 179:15, 21;
180:22; 181:6; 187:19;
188:10; 193:7, 9
**problematic** [2] -
178:17; 182:19
**problems** [4] - 133:3;
150:2; 174:23; 184:6
**procedural** [1] - 134:3
**procedurally** [2] -
148:20; 187:3
**procedure** [3] - 150:4,
25; 191:8
**proceedings** [1] -
197:8
**proceeds** [4] - 162:7;
164:4, 6; 172:6
**process** [3] - 133:5;
139:18; 188:19
**produce** [1] - 146:9
**produced** [2] - 165:15;
166:16
**producing** [2] -
166:19; 196:4
**productive** [1] - 194:1
**products** [8] - 137:15;
178:15; 179:4, 12, 17,
20; 180:8, 17
**professional** [1] -
153:16
**program** [1] - 179:19
**prohibited** [1] -
155:14
**prolonged** [1] - 133:5
**proof** [9] - 127:14;
143:16, 24; 144:3;
170:6; 172:4; 189:1, 5
**proper** [2] - 146:8;
175:9
**properly** [1] - 175:21
**proponent** [1] - 190:24

propose [1] - 185:9

prove [4] - 139:23; 143:17; 181:14; 185:2

provide [3] - 127:9; 190:8; 194:19

provided [2] - 154:6; 193:12

provides [1] - 138:22

public [1] - 177:18

pulled [1] - 174:3

purchase [1] - 182:2

purpose [1] - 140:18

purpose.. [1] - 165:5

purposes [8] - 128:5; 130:7; 131:4, 25; 132:18; 136:20; 141:20; 144:19

pursue [1] - 168:1

purview [1] - 149:5

put [20] - 144:11; 147:9, 22; 149:24; 150:15; 158:17; 163:8; 171:11; 172:4; 179:17; 183:22; 184:2; 187:10, 24; 188:2, 11; 189:2, 12; 194:3

PX [2] - 154:19; 193:22

**Q**

questions [3] - 151:5; 191:1

quite [1] - 194:12

quoted [1] - 173:15

quotes [1] - 174:2

**R**

raise [2] - 156:11; 185:13

raised [2] - 127:10; 133:11

raises [1] - 137:18

ran [1] - 187:15

RAPAPORT [1] - 126:21

rather [4] - 146:15; 158:11, 21

reach [1] - 141:9

reached [1] - 138:20

reactivate [1] - 182:1

read [12] - 136:13; 170:3; 178:13; 182:8; 187:9; 188:8; 190:24; 191:2; 193:2-4, 21

readdress [1] - 170:11

reading [2] - 138:25; 186:11

reads [2] - 158:9; 191:3

ready [1] - 166:22

realized [1] - 134:22

really [8] - 132:9; 141:10; 154:1; 164:5; 172:23; 176:9, 13; 179:24

reargument [1] - 137:21

reason [4] - 127:8; 138:8; 175:3; 184:2

reasonable [2] - 141:8; 195:2

reasons [3] - 131:24; 157:6; 163:8

receive [2] - 165:24; 195:9

received [2] - 143:13; 195:6

recess [2] - 151:16

recipient [1] - 147:8

recitation [1] - 137:9

recognize [3] - 131:25; 133:14; 157:18

recognized [1] - 156:18

recollection [1] - 135:21

recommend [1] - 175:17

reconsideration [2] - 137:23; 138:12

record [8] - 142:1; 149:20; 152:22; 165:3, 24; 174:6, 11; 190:25

recovery [1] - 138:6

redirect [1] - 190:19

reducing [1] - 184:7

refer [2] - 146:1; 153:9

reference [7] - 143:18; 156:7; 167:9, 16; 178:1; 182:12; 184:19

referenced [2] - 146:23; 156:14

references [1] - 173:19

referencing [3] - 146:21; 148:24; 162:19

referring [1] - 166:13

regard [4] - 129:15; 132:6; 146:12; 166:15

regarding [2] - 142:25; 183:19

Registration [1] - 139:10

registration [4] - 129:22; 130:8; 134:12; 135:8

regulations [1] - 184:11

Regulations [1] - 139:6

reiterated [1] - 142:2

relatively [2] - 131:3; 145:6

relevance [1] - 180:10

relevancy [1] - 188:8

relevant [11] - 128:21, 23; 137:12; 179:23; 180:15, 20; 181:8; 182:16; 188:12; 194:6

reliance [1] - 168:4

relied [1] - 147:18

rely [3] - 133:24; 147:17

relying [2] - 147:15; 167:25

remain [1] - 142:17

remember [1] - 144:21

remove [3] - 171:2; 183:21

removed [2] - 132:7; 169:1

render [1] - 143:21

rendered [2] - 127:19; 135:4

reopening [1] - 133:4

repeat [1] - 172:17

repeated [1] - 157:10

reply [1] - 166:16

report [1] - 195:4

Reporters [1] - 126:21

representation [4] - 153:17; 159:9; 181:12

representative [1] - 177:16

represented [4] - 167:22; 168:10, 21; 178:22

representing [2] - 150:14; 174:20

requests [1] - 144:22

required [2] - 188:3; 193:8

requirements [1] - 137:21

requires [1] - 146:9

residents [1] - 134:24

resolve [3] - 129:4; 140:3; 174:17

resolved [5] - 127:11; 128:3; 185:6; 186:5; 194:22

resolving [1] - 131:11

respect [14] - 128:14; 131:15; 134:16, 18; 135:17; 143:13; 153:19, 24; 154:2; 167:8; 170:11; 180:13; 184:1; 192:21

respond [1] - 166:23

responded [2] - 148:1; 153:17

response [9] - 134:15; 135:19; 152:6; 153:22; 157:14; 176:2; 177:23; 183:12

rest [5] - 170:21; 175:21; 176:1; 177:1; 182:23

restatement [1] - 159:10

result [1] - 141:19

Retailer [1] - 179:19

review [3] - 128:10; 136:14; 142:8

reviewed [3] - 136:15; 152:17; 187:11

reviewing [1] - 136:1

revise [1] - 185:10

revisit [1] - 137:22

revisited [2] - 185:7

right-hand [1] - 153:10

Room [1] - 126:16

route [1] - 183:16

rule [8] - 127:15; 136:21; 138:22; 139:1, 12; 141:6; 190:15

Rule [11] - 128:9; 131:5; 133:6, 14; 136:7, 21; 138:12; 141:21; 162:22; 163:3; 166:18

ruled [2] - 163:4; 164:25

rules [4] - 137:20; 185:20; 190:9; 192:20

ruling [3] - 147:14; 151:11; 165:1

rulings [3] - 143:21; 185:10, 12

**S**

salaries [1] - 164:8

**sale** [5] - 130:1, 11; 132:14; 143:1; 184:23

**sales** [2] - 130:13; 180:4

**sanctioned** [1] - 183:17

**satisfy** [3] - 148:13, 15, 19

**scenario** [2] - 141:9; 144:15

**scienter** [3] - 143:1; 144:4; 145:3

**Scientology** [2] - 195:16

**Se** [1] - 126:19

**se** [2] - 179:2; 197:2

**se's** [1] - 192:17

**searching** [1] - 162:23

**seated** [2] - 127:4; 151:18

**SEC** [78] - 128:13; 129:21; 130:20; 131:7; 133:23; 134:17; 136:22; 137:11, 25; 138:5, 20, 24; 139:14; 141:15; 142:12; 143:11, 17; 153:13; 154:16; 155:10; 156:9, 12, 22; 157:1, 11, 15, 19, 21, 25; 166:14, 16, 23; 167:6, 14, 20; 168:25; 169:8, 10, 19-21; 170:7, 14, 16-18; 171:6, 16, 22; 172:10, 12-13, 20, 22; 173:4, 11; 174:17; 175:6, 18, 20, 23-24; 176:7; 177:1, 4, 9, 24-25; 178:6; 179:6; 184:9; 188:25; 191:14; 193:24; 194:13

**SEC's** [11] - 127:21; 132:9, 23; 142:8; 154:2; 160:11; 161:14; 166:24; 183:7; 185:5

**second** [16] - 127:22; 128:8, 14; 129:20; 132:10; 143:18; 144:20; 169:2, 6, 20; 176:4; 177:3; 178:12; 182:9; 184:5

**Second** [1] - 137:16

**secondary** [1] - 129:14

**secondly** [1] - 154:5

**Section** [1] - 142:21

**section** [11] - 127:24; 128:16; 129:7; 130:25; 131:18; 132:10; 136:7; 142:19, 21; 149:8;

170:18

**SECURITIES** [2] - 126:3, 16

**securities** [10] - 129:22, 25; 130:11; 132:14; 142:19; 167:22; 168:10, 13; 184:10; 186:24

**Securities** [2] - 127:24; 128:16

**Security** [1] - 139:6

**security** [1] - 143:2

**security's** [1] - 155:14

**see** [16] - 144:1; 151:23; 152:7; 159:7; 160:13; 165:4; 166:7; 168:23; 170:21; 172:14; 174:24; 180:10; 182:1; 186:5; 194:16; 197:6

**seek** [1] - 127:13

**seeking** [1] - 173:17

**seeks** [1] - 148:20

**seem** [1] - 146:11

**self** [1] - 148:4

**self-labeled** [1] - 148:4

**sell** [2] - 129:24

**selling** [1] - 184:7

**sense** [4] - 130:6; 142:13; 152:8; 172:10

**sent** [5] - 146:18; 151:8; 195:17, 22

**sentence** [10] - 169:2, 20; 170:1; 171:7, 21; 172:21; 173:9; 178:13; 182:18; 193:16

**sentences** [1] - 152:13

**separate** [2] - 174:15

**September** [18] - 126:10; 127:19; 128:7, 11; 130:5; 135:4; 136:8; 139:17; 144:8; 145:19; 146:3, 24; 147:16; 148:8; 154:18; 169:7; 181:3; 197:9

**serial** [3] - 136:20; 140:12; 141:17

**series** [2] - 127:13; 195:15

**seriously** [1] - 178:11

**serve** [1] - 138:10

**served** [1] - 132:22

**serves** [1] - 134:5

**set** [9] - 136:24; 137:20; 138:22; 140:20; 142:12; 145:3; 154:4;

171:9; 179:25

**settling** [1] - 179:7

**seven** [2] - 172:8, 12

**several** [2] - 129:19; 192:5

**shall** [3] - 150:17; 151:25; 172:19

**shareholder** [2] - 193:19, 23

**shares** [1] - 158:2

**shifts** [1] - 139:23

**short** [1] - 145:6

**shortened** [1] - 129:13

**shorter** [1] - 188:9

**shots** [1] - 161:3

**show** [36] - 130:22; 146:17; 147:3, 7; 151:13; 153:4; 157:4; 159:18; 161:15; 162:2; 163:22; 166:25; 167:9; 168:14, 19; 169:12, 15; 170:6; 171:10; 172:4; 176:4; 181:9; 182:16; 183:10; 184:17; 185:4; 186:4; 188:16, 18; 189:15; 196:20, 25

**showing** [1] - 184:24

**shown** [6] - 159:2; 164:5; 169:24; 170:18, 25; 191:13

**shows** [1] - 164:4

**side** [8] - 133:17; 151:21; 153:24; 163:23; 164:11; 175:21; 181:15

**side's** [2] - 151:14, 23

**sidebar** [1] - 148:23

**sides** [4] - 141:14; 149:4; 185:15; 194:23

**sideshow** [1] - 183:18

**Sidney** [1] - 154:23

**signature** [3] - 183:11, 23; 184:19

**signed** [6] - 144:7, 13; 150:15; 179:11; 184:24

**significant** [2] - 131:6; 151:1

**significantly** [2] - 127:16; 164:8

**similar** [4] - 153:17; 167:3; 172:9, 16

**similarly** [3] - 130:13; 131:5; 170:23

**simplify** [1] - 138:8

**Singapore** [1] - 154:22

**sitting** [1] - 191:3

**situation** [1] - 147:7

**six** [6] - 172:7; 179:4, 11, 24; 182:2, 12

**skip** [1] - 145:8

**skipped** [1] - 145:11

**skipping** [1] - 183:2

**slide** [16] - 157:13; 161:15; 166:25; 176:4, 6-7; 183:3; 184:17; 185:5; 186:4; 188:16, 18; 196:20, 25

**slides** [22] - 151:7, 9, 14-15, 21; 152:2, 6, 11; 153:13, 25; 154:2, 4; 155:16; 156:4; 157:16; 160:9, 11; 162:19; 167:5, 8; 174:2

**smart** [1] - 163:19

**Smith** [5] - 167:23; 168:5, 11, 21

**so-called** [1] - 135:10

**sold** [4] - 130:12; 181:10; 184:8, 20

**solely** [1] - 143:13

**someone** [1] - 147:25

**sometime** [1] - 180:16

**sometimes** [1] - 143:24

**somewhat** [3] - 134:3; 150:2; 159:16

**soon** [1] - 154:23

**sorry** [10] - 136:12; 167:11; 169:3; 173:23; 174:12; 180:25; 181:1; 189:20; 195:8

**sort** [4] - 146:25; 149:9; 165:17; 170:22

**sought** [3] - 128:13; 133:18; 150:6

**sounds** [1] - 143:3; 162:20; 173:10

**Southern** [2] - 137:14

**speaking** [1] - 192:11

**specifically** [1] - 150:14

**specificity** [2] - 135:9; 145:2

**spend** [1] - 193:24

**square** [1] - 134:5

**stamp** [1] - 146:14

**stand** [6] - 133:10, 16; 190:17; 191:1, 3, 9

**start** [3] - 145:15; 172:10; 188:16

**starting** [1] - 175:8

**starts** [1] - 157:3

**statement** [10] - 129:22; 134:12; 135:8;

150:11; 158:21; 163:16, 21; 177:23; 178:12; 182:17

**statements** [7] - 128:1; 130:8; 151:22, 24; 158:15; 159:16; 186:9

**states** [1] - 134:24

**States** [1] - 126:22

**STATES** [2] - 126:1, 15

**stating** [1] - 164:8

**status** [1] - 160:16

**statute** [3] - 128:21, 23; 129:4

**step** [2] - 129:19; 137:8

**still** [3] - 149:10; 167:4; 185:12

**stock** [15] - 131:3; 134:16, 21-22; 141:17; 167:21; 183:10; 184:7, 12, 19, 21, 23, 25

**story** [3] - 153:24; 158:7; 163:24

**straightforward** [1] - 142:14

**streamline** [1] - 149:24

**stuff** [2] - 183:22, 25

**subject** [9] - 129:16; 136:7; 137:22; 139:20; 140:2; 144:23; 171:10; 185:7; 190:9

**submission** [1] - 195:16

**submissions** [1] - 136:22

**submit** [1] - 164:21

**submitted** [3] - 136:1; 149:22; 175:3

**subset** [1] - 129:1

**subsets** [1] - 129:18

**subsidiary** [1] - 132:11

**substitute** [1] - 176:11

**successful** [1] - 132:6

**succinct** [1] - 138:6

**suggest** [7] - 134:17; 140:17; 147:21; 177:4; 179:2; 180:7; 196:24

**suggested** [1] - 138:19

**suggesting** [6] - 177:11; 183:6, 25; 184:20; 192:9

**suggests** [3] - 168:7; 170:22; 185:7

**suit** [1] - 184:12

**sum** [1] - 185:10

**Summary** [1] - 174:10

**summary** [14] - 127:21; 128:2, 13; 131:19; 132:1, 4, 17; 135:3; 137:5; 139:19; 149:14; 174:3, 7

**summation** [4] - 158:6; 159:19; 181:17; 190:6

**supplement** [1] - 176:9

**supplier** [1] - 181:4

**suppliers** [3] - 148:1; 178:15; 181:7

**supposed** [1] - 187:8

**supposedly** [1] - 161:6

**suppressed** [1] - 156:25

**surfaced** [1] - 185:6

**surprised** [1] - 153:13

**suspect** [2] - 134:17; 154:10

**sworn** [1] - 190:1

### T

**table** [2] - 131:19; 150:24

**taints** [1] - 181:16

**target** [1] - 132:9

**task** [1] - 138:9

**Taylor** [5] - 178:16; 179:10, 16; 181:3; 188:1

**technology** [1] - 159:22

**telephones** [1] - 135:22

**television** [2] - 190:16; 193:25

**ten** [4] - 151:16; 174:18; 180:17; 183:19

**ten-minute** [1] - 151:16

**tends** [1] - 183:8

**tenth** [1] - 164:24

**terms** [6] - 149:10; 151:4; 155:12, 16; 156:22; 157:3

**test** [1] - 137:6

**testify** [3] - 136:3; 179:3; 190:8

**testifying** [2] - 189:13; 191:13

**testimonies** [1] - 192:5

**testimony** [17] - 141:5, 16; 149:16; 161:2; 168:16; 179:3; 189:17; 190:1, 4, 22-23; 192:12, 21; 193:1, 3, 5

**text** [1] - 139:12

**THE** [136] - 127:3, 8; 142:7; 145:14, 20, 23; 146:5, 17; 147:1, 12, 19; 148:25; 149:2; 150:1, 18, 22; 151:12, 15, 18; 152:9, 17, 21; 153:3, 7, 18; 154:1; 155:4, 8, 18, 24; 156:3, 15; 157:15; 158:17; 159:1, 5, 14; 160:1, 4, 10, 20, 23; 161:6, 10, 12; 162:1, 8, 25; 163:4, 6, 16, 19; 164:9, 13, 18, 24; 165:21; 166:12, 21, 24; 167:6; 168:15, 20; 169:3, 14, 22; 170:2; 171:4, 13, 23, 25; 172:4, 18; 173:1, 23; 174:11, 17; 175:13, 22; 176:13, 20, 23; 177:6, 13, 24; 178:4, 10; 179:9, 21; 180:9, 22, 25; 181:5; 182:4, 11, 15, 20, 25; 184:1; 185:3, 15, 18; 186:1, 13, 17; 187:6, 20; 188:3, 7, 11, 15, 18, 22, 25; 189:9, 18, 24; 190:3, 5, 15, 23; 191:18, 21; 192:3, 13, 16, 20; 193:7, 17; 194:10, 21; 195:20; 196:11, 18, 23; 197:5

**thereabouts** [1] - 132:24

**therefore** [3] - 129:2; 132:4; 140:6

**Theresa** [1] - 168:21

**they've** [5] - 134:17; 136:15; 137:3; 164:4; 189:11

**thinks** [1] - 165:2

**third** [1] - 177:7

**Thomas** [1] - 139:11

**three** [6] - 130:1; 131:2; 134:21; 135:1; 139:22; 140:12, 17; 141:17, 21; 143:1, 7; 170:13, 17; 171:6; 172:10; 184:13

**throughout** [1] - 133:5

**throw** [1] - 173:14

**thrust** [1] - 176:10

**tired** [1] - 185:16

**title** [2] - 144:11; 158:19

**today** [8] - 143:7; 145:5; 146:22; 185:11; 186:7; 195:3

**together** [1] - 185:19

**Tokyo** [1] - 154:24

**took** [1] - 187:9

**top** [1] - 154:14

**topics** [1] - 150:17

**total** [2] - 134:22; 141:18

**TRANSCRIPT** [1] - 126:9

**transcript** [5] - 191:1, 4, 7; 193:20

**transcripts** [4] - 179:1; 193:15; 194:2

**treatise** [2] - 139:4

**Treatise** [1] - 139:5

**trial** [17] - 132:19; 138:13; 143:23; 154:7; 156:18; 165:16; 169:25; 175:9; 177:22; 183:20; 184:8; 185:2; 188:14; 190:11; 193:25; 194:18, 22

**TRIAL** [1] - 126:9

**tried** [3] - 145:5; 157:9; 172:23

**trier** [1] - 141:8

**true** [4] - 136:17; 154:11; 163:25; 192:3

**truth** [12] - 171:17, 25; 172:1, 11, 25; 173:1; 175:20; 176:14, 17; 177:8; 178:2, 8

**try** [4] - 147:7; 185:10; 187:16; 196:18

**trying** [3] - 138:6; 158:24; 183:13

**turn** [2] - 176:21; 191:25

**turned** [1] - 130:19

**turns** [2] - 138:21; 148:2

**two** [20] - 127:25; 128:12, 18-19; 129:24; 135:2; 139:21; 142:16, 25; 146:22; 148:18; 151:5; 166:3; 168:25; 169:20; 170:8, 24; 180:18; 192:5

**type** [3] - 165:9; 167:2

**typically** [4] -

133:17; 150:22; 186:20; 190:25

## U

**U.S** [1] - 126:6
**U.S.C** [1] - 142:21
**U.S.D.J** [1] - 126:13
**unavailable** [1] - 139:13
**under** [23] - 128:9, 23; 133:6, 14; 137:16; 138:4, 12; 139:12; 140:4; 141:8; 143:18; 144:2, 15; 145:3; 149:7; 162:22; 163:3, 9; 172:21; 176:24; 184:5, 15; 189:22
**underneath** [3] - 171:1, 12, 18
**underpinnings** [1] - 140:14
**understood** [1] - 158:23
**undertaken** [1] - 131:15
**underwhelmed** [2] - 153:20; 182:5
**undisputed** [1] - 130:6
**unfold** [1] - 177:22
**unfolding** [1] - 150:2
**unfolds** [1] - 154:5
**unfortunately** [1] - 194:21
**United** [1] - 126:22
**UNITED** [2] - 126:1, 15
**unless** [4] - 140:19; 146:12, 17; 180:9
**unnecessarily** [1] - 180:23
**unregistered** [1] - 186:24
**untimely** [1] - 137:24
**up** [15] - 136:11; 152:2; 153:6; 159:10; 162:10; 166:8; 169:5; 171:8; 177:11; 178:14; 181:19, 23; 182:23; 186:25; 192:1
**updated** [1] - 139:7
**uses** [3] - 156:22; 164:7

## V

**validly** [1] - 132:3
**value** [2] - 184:7, 12

**various** [6] - 127:9; 136:23; 148:1; 163:1; 184:10; 196:19
**VASILESCU** [77] - 126:17; 127:5; 145:12, 15, 21, 24; 146:16, 20; 147:11, 13; 148:16; 149:1, 7; 150:14; 151:4; 152:1, 5, 10; 155:7, 9; 156:1, 4, 16; 158:14, 23; 159:3, 12, 24; 160:8, 18, 22; 161:1, 11; 162:18; 163:14; 164:22; 165:13; 166:7; 167:4, 12, 20; 168:12, 24; 169:4, 18, 24; 170:13; 171:21, 24; 172:9, 20, 25; 173:3, 8; 175:6, 18; 176:21, 24; 177:10; 178:3, 5, 11; 180:2, 21; 182:18, 22; 183:2, 13; 184:22; 185:9, 17; 192:4; 195:7, 9, 21; 196:13, 21
**Vasilescu** [3] - 176:16; 195:5, 7
**Vavaro** [2] - 187:23; 192:2
**version** [1] - 196:2
**via** [1] - 135:5
**viable** [1] - 142:17
**Victor** [1] - 142:6
**video** [7] - 192:5, 8, 11; 194:9, 12, 16
**videotape** [1] - 194:6
**videotaped** [1] - 193:17
**videotapes** [2] - 193:13, 23
**view** [4] - 131:16; 151:23; 154:2; 160:2
**violation** [6] - 127:23; 129:4; 130:24; 131:18; 140:24; 142:18
**violations** [3] - 127:23; 128:16; 184:9
**voluminous** [1] - 134:1

## W

**wait** [1] - 162:8
**waiting** [1] - 164:16
**waived** [1] - 179:6
**waiver** [1] - 168:1
**wants** [4] - 162:20; 194:5, 18; 196:5
**Washington** [1] -

154:21
**wasting** [1] - 176:18
**watch** [1] - 190:17
**watching** [1] - 193:25
**ways** [5] - 128:18; 135:15; 147:6; 186:18; 191:24
**website** [4] - 179:12, 17; 181:11, 25
**websites** [1] - 160:17
**Wednesday** [3] - 127:10; 142:3, 11
**week** [1] - 127:10
**weight** [1] - 148:5
**Westlaw** [1] - 139:4
**whole** [14] - 134:9; 141:4; 170:1, 3; 175:14; 182:21; 183:18, 22; 187:24; 193:3, 5; 194:9, 11
**WICKER** [1] - 126:22
**withdraw** [4] - 146:6; 166:4; 168:22
**withdrawn** [1] - 146:6
**withdrew** [1] - 166:17
**witness** [4] - 189:2; 190:17; 191:22
**witnesses** [3] - 136:2; 161:2
**word** [21] - 153:21; 155:19; 156:9; 157:23; 158:4; 159:15; 160:12, 18, 21; 161:10; 167:13; 170:11, 24; 171:15; 172:11, 25; 175:20; 176:14; 177:8; 178:2, 8
**wording** [2] - 177:4, 9
**words** [13] - 139:14; 141:2; 142:2; 148:21; 156:23; 158:18; 163:6; 176:17; 180:10; 181:6; 184:9; 194:11
**World** [1] - 126:16
**worthless** [4] - 183:11, 24-25; 184:20
**wrestled** [1] - 131:13
**write** [1] - 152:24
**written** [2] - 128:25; 139:11
**wrote** [3] - 147:22, 25; 169:7

## Y

**year** [2] - 166:15; 179:25
**years** [5] - 133:10;

137:22; 179:13; 180:19; 183:19
**YEROUSH** [1] - 126:8
**YEROUSHALMI** [1] - 126:8
**yesterday** [1] - 143:7
**YORK** [1] - 126:1
**York** [6] - 126:17, 23; 137:14; 154:21

## Z

**Zellen** [1] - 178:21